No. 24-914

# In the United States Court of Appeals
# for the Ninth Circuit

GEORGE CABLE, AN INDIVIDUAL,

*Plaintiff-Appellant,*

v.

STARBUCKS CORPORATION,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the Central District of California
No. 2:20-CV-10931-JLS-AS
Hon. Josephine L. Staton

## APPELLANT'S BRIEF

Joshua Cohen Slatkin (SBN 285090)
JCS Law Firm, Inc.
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA 90025
josh@jcslawyers.com
(833) 527-3476

*Attorney for Plaintiff - Appellant*
GEORGE CABLE, an individual

## Corporate Disclosure Statement

Pursuant to Federal Rules Appellate Procedure 26.1, **Plaintiff-Appellant, GEORGE CABLE, an individual** is an individual and there are no interests to report.


Dated: July 15, 2024                    By: /s/ Joshua Cohen Slatkin

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF CONTENTS ...............................................................ii

TABLE OF AUTHORITIES ........................................................iv

APPELLANT'S BRIEF ............................................................... 1

   I.   JURISDICTIONAL STATEMENT ............................................. 1

  II.   ISSUES PRESENTED................................................................. 2

 III.   SUMMARY OF THE ARGUMENT............................................. 2

 IV.   STATEMENT OF FACTS........................................................... 5

     A.   Mr. Cable Suffered a Workplace Injury While Employed at Starbucks Which Resulted in Starbucks Having to Provide Years of Medical Accommodations. .............5

     B.   Starbucks Invents a Pretextual Reason to Terminate Cable in 2019 to Avoid Further Compliance with Mr. Cable's Medical Restrictions.........................................6

     C.   The Jury Trial and the Incomplete Verdict Form. ....................8

     D.   Motions after the Trial................................................................15

  V.   STANDARDS OF REVIEW ....................................................... 16

 VI.   ARGUMENT.............................................................................. 17

     A.   THE DISTRICT COURT ERRED IN CLAIMING IT ACTED AS IT DID BECAUSE IT CONCLUDED THERE WAS AN INCONSISTENCY IN THE INITIAL VERDICT FORM.......................................................... 17

     B.   The Jury's Verdict Was Incomplete, not Inconsistent, For Purposes of the Application of FRCP 49(b). ..................... 20

     C.   The District Court Was Required to Accept the Liability Verdict and to Ask the Jury to Answer the Remaining Questions on the Verdict Form, or to Declare a Mistrial. ................................................................. 25

    D.   THE DISTRICT COURT'S VAGUE DIRECTIONS TO THE JURY INFLUENCED THE JURY TO CHANGE ITS LIABILITY VERDICT.................................28

    E.   THE VERDICT FORM'S CHANGES BETWEEN THE INITIAL AND REVISED VERDICTS RESULTED FROM AN IMPROPER COMPROMISE VERDICT...................................................33

  VII.   CONCLUSION ........................................................39

FORM 17. STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6 .......................................40

CERTIFICATE OF COMPLIANCE ......................................41

CERTIFICATE OF SERVICE ............................................42

iii

# Table of Authorities

Page

**Cases:**

*Aczel v. Labonia*
  584 F.3d 52 (2nd Cir. 2009)  ............................................ 35

*Affordable Hous. Dev. Corp. v. City of Fresno*
  433 F.3d 1182 (9th Cir. 2006)  ........................................ 16

*Atl. & Gulf Stevedores, Inc. v. Ellerman Lines Ltd.*
  369 U.S. 355 (1962)  ...................................................... 19

*Boone v. United States*
  944 F.2d 1489 (9th Cir. 1991)  ........................................ 16

*Burris v. Nassau Cty.*
  332 F. Supp.3d 596 (E.D.N.Y. 2018)  .............................. 22

*California v. Altus Fin. S.A.*
  540 F.3d 992 (9th Cir. 2008)  ....................... 17, 27, 28, 35

*Carter v. Moore*
  165 F.3d 1071 (7th Cir. 1998)  ........................................ 36

*Costilla v. Aluminum Co. of Am.*
  826 F.2d 1444 (5th Cir. 1987)  ........................................ 21

*D'Hedouville v. Pioneer Hotel Co.*
  552 F.2d 886 (9th Cir. 1977)  .......................................... 36

*Duk v. MGM Grand Hotel, Inc.*
  320 F.3d 1052 (9th Cir. 2003)  ........................................ 33

*Eastland Partners Ltd. Partners v. Vill. Green Mgmt. Co. (In re Brown)*
  342 F.3d 620 (6th Cir. 2003)  .......................................... 35

*Fairmount Glass Works v. Cub Fork Coal Co.*
  287 U.S. 474 (1933)  ...................................................... 23

*Flores v. City of Westminster*
  873 F.3d 739 (9th Cir. 2017)  .......................................... 17

*Floyd v. Laws*
  929 F.2d 1390 (9th Cir. 1991)  ................................... 25, 37

*Gallick v. Balt. & Ohio R.R.*
372 U.S. 108 (1963) ................................................................ 19

*Griffin v. Matherne*
471 F.2d 911 (5th Cir. 1973) .................................................. 21

*Hafner v. Brown*
983 F.2d 570 (4th Cir. 1992) .................................................. 32

*Hard v. Burlington Northern R.R. Co.*
870 F.2d 1454 (9th Cir. 1989) ............................................... 38

*Hatfield v. Seaboard A.L.R. Co.*
396 F.2d 721 (5th Cir. 1968) .................................................. 36

*Iacurci v. Lummus Co.*
387 U.S. 86 (1967) ................................................................. 28

*Los Angeles Nut House v. Holiday Hardware Corp.*
825 F.2d 1351 (9th Cir. 1987) ........................................ 17, 18

*Lucas v. Am. Mfg. Co.*
630 F.2d 291 (5th Cir. 1980) .................................................. 36

*Magnussen v. YAK, Inc.*
73 F.3d 245 (9th Cir. 1996) ................................................... 17

*Nance v. Gulf Oil Corp.*
817 F.2d 1176 (5th Cir. 1987) ........................................ 19, 32

*Nat'l Fire Ins. Co. of Hartford v. Great Lakes Warehouse Corp.*
261 F.2d 35 (7th Cir. 1958) .................................................... 35

*Nat'l R.R. Passenger Corp. v. Koch Indus., Inc.*
701 F.2d 108 (10th Cir. 1983) ............................................... 36

*Norris v. Sysco Corp.*
191 F.3d 1043 (9th Cir. 1999) ............................................... 16

*Perricone v. Kansas City Southern Ry. Co.*
704 F.2d 1376 (5th Cir. 1983) ............................................... 30

*Philippine Nat'l Oil Co. v. Garrett Corp.*
724 F.2d 803 (9th Cir. 1984) .................................................. 23

*Pryer v. C.O. 3 Slavic*
251 F.3d 448 (3rd Cir. 2001) ................................................. 36

*Quaker City Gear Works, Inc. v. Skil Corp.*
747 F.2d 1446 (Fed. Cir. 1984)  ......................................................... 27

*Richard v. Firestone Tire & Rubber Co.*
853 F.2d 1258 (5th Cir. 1988)  ........................................................... 31

*Riley v. K Mart Corp.*
864 F.2d 1049 (3d Cir. 1988)  ...................................................... 33, 34

*Romberg v. Nichols*
970 F.2d 512 (9th Cir. 1992)  .............................................................. 36

*Shugart v. Cent. Rural Elec. Coop.*
110 F.3d 1501 (10th Cir. 1997)  .......................................................... 34

*United States v. Bagnariol*
665 F.2d 877 (9th Cir. 1981)  ........................................................ 17, 34

*United States v. Saya*
247 F.3d 929 (9th Cir. 2001)  .............................................................. 38

*United States v. Straach*
987 F.2d 232 (5th Cir. 1993)  .............................................................. 35

*Wilks v. Reyes*
5 F.3d 412 (9th Cir. 1993)  ............................................. 16, 17, 18, 24

*Zhang v. Am. Gem Seafoods*
339 F.3d 1020 (9th Cir. 2003)  ........................................................... 22

## Statutes:

28 U.S.C. § 1291  ................................................................................. 1

28 U.S.C. § 1332  ................................................................................. 1

## Constitutions:

U.S. Const., 7th Amend.  ........................................ 18, 19, 20, 26, 28, 39

## Court Rules:

Fed. R. App. P. 4  ............................................................................... 1

Fed. R. Civ. P. 49  ......................................................... 3, 4, 20, 27

Fed. R. Civ. P. 59  ............................................................. 1, 37

**Other:**

Am. Heritage Dictionary 845 (2d ed. 1985) ......................................... 24

Blanch, Rosenthal, Hart & Bernieri, The Measure of the Judge:
    An Empirically-Based Framework for Exploring Trial
    Judges' Behavior, 75 Iowa L.Rev. 653 (March 1990) ...................... 31

CACI No. 2505 .................................................................................. 22

Lichstein, Beyond Caperton: "Public Confidence" in Courts and
    Close Relationships Between Judges and Jurors, 61
    Cath.U.L.Rev. 429 (Spring 2012) ..................................................... 32

Moore's Federal Practice § 49.11 ....................................................... 21

Wright and Miller, Federal Practice and Procedure: Civil,
    § 2510 (1971) ................................................................................... 27

## Appellant's Brief

## I. JURISDICTIONAL STATEMENT

The United States District Court for the Central District of California had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).

The final orders from which Mr. George Cable ("Cable" or "Appellant") appeals are appealable pursuant to 28 U.S.C. § 1291. The Judgment was entered on December 11, 2023. (1-ER[1]-17–18). The order denying Mr. Cable's motion for a new trial pursuant to Federal Rules of Civil Procedure 59(a) and order denying Mr. Cable's motion to alter or amend the judgment pursuant to Federal Rules of Civil Procedure 59(e)were entered on February 20, 2024. (1-ER-2–6). The Notice of Appeal was filed on February 20, 2024 (2-ER, 335–345), making this appeal timely pursuant to Federal Rules of Appellate Procedure 4.

---

[1]    Excerpts of Record.

## II.   ISSUES PRESENTED

1.   When the jury returned a verdict in favor of Mr. Cable as to his retaliation claim, but failed to complete the damages question(s), did the district court err in determining that the verdict was inconsistent and resubmitting the entire verdict form to the jury instead of entering judgment in favor of Mr. Cable, and instructing the jury to answer the damages question(s)?

2.   Whether a judgement for Starbucks Corporation may be supported by a set of jury responses which were directly contradictory to and irreconcilable with a prior set of answers which, if they had been accepted by the district court, would have required a judgement in favor of George Cable?

3.   Did the district court's vague directions to the jury improperly influence the jury to change its liability verdict?

4.   Did the district court err in denying Cable's motion for juror interviews by concluding there was no reasonable possibility of juror misconduct (e.g. a compromise verdict) under the facts and circumstances of this case?

## III.   SUMMARY OF THE ARGUMENT

This appeal arises from the district court's improper handling of a jury's failure to complete the verdict form. The jury found Starbucks liable for pretextually terminating George Cable ("Appellant" or "Cable") because he had made "request[s] for workplace accommodations or any complaint relating to the interactive process." (1-ER-9, 58 [Special Verdict Form Question 3, checked "yes" by the jury].) In order to reach this conclusion, the jury, by checking "yes" to question 3, found that Cable's requests for medical accommodation as a

result of a workplace injury was "a substantial motivating reason for Starbucks Corporation's decision to terminate George Cable's employment." (Id.)

However, the jury did not complete the verdict form, as both the verdict form and the jury instructions had told the jury that if it found Starbucks liable under any count, it either had to award actual damages, or, if it found no actual damages, then it was to award nominal damages (as required by statute for Cable's claims). The jury returned the liability verdict without having proceeded to check <u>any</u> of the boxes to the damages portion of the verdict form. The jury left that section blank.

In attempting to rectify the jury's mistake, the district court mishandled the situation under Federal Rules of Civil Procedure ("FRCP") 49. It influenced the jury to believe it had made a mistake in finding liability, as, when the district court sent the verdict form back to the jury, it merely alluded to something being wrong with the verdict form without telling the jury *what* was wrong. The district judge's messaging plainly confused the jury, which took the verdict form back to the jury room and, instead of selecting one of the damages options, came back and told the district court it had made a mistake in checking "yes" to liability question 3. The jury clearly misunderstood the district court's fumbled directions, and decided the district court was hinting it needed to reverse itself instead of simply completing the form.

Drastically compounding its mishandling of the situation under FRCP 49, the district court improperly conducted its communications with the jury when it failed to seek input from counsel before it decided how to address the incomplete verdict form with the jury. Then, after the jury reversed itself, Cable's counsel sought permission to interview the jurors so it could be determined the basis for the jury's reversal as to its liability findings prior to and after resubmission, and the district court erred in denying this request.

The clear preponderance of the circumstances establishes that the district court failed to properly handle the incomplete verdict form, failed to follow the dictates of FRCP 49, failed to seek input from counsel, and then in essence "covered up" its mistake by precluding Cable's counsel from interviewing the jurors which failed to afford Cable an opportunity to collect evidence necessary to establish the jury was influenced by the district court to reverse its liability finding. Fairness and due process demand the verdict be vacated and remanded for a new trial.

## IV.  STATEMENT OF FACTS

### A.  Mr. Cable Suffered a Workplace Injury While Employed at Starbucks Which Resulted in Starbucks Having to Provide Years of Medical Accommodations.

Mr. George Cable ("Cable" or "Appellant") was employed by Starbucks Corporation ("Appellee" or "Starbucks") as a barista from 2003 until his termination on November 22, 2019. (1-ER-150, 152, 156).

Early in his employment with Starbucks (on July 6, 2005), Cable suffered a workplace accident resulting in a partial permanent disability to Cable's neck when heavy boxes of cup lids fell on Cable's head. (1-ER-156–158). As a result of this workplace injury, Starbucks was required to implement medical work restrictions for Mr. Cable, including that Starbucks could not have Mr. Cable, a barista, engage in repetitive motions of the neck. Nor could Starbucks assign Cable prolonged or repetitive work tasks involving his arm(s) at or above his shoulder level. (1-ER-157).

Over time, additional medical work restrictions were implemented which caused Cable to be placed on modified work duty, keeping him from working more than four (4) hours per shift on consecutive work days. (1-ER-158). There is no dispute that Starbucks found the four-hour shifts restriction to be difficult from a management perspective, as managers had difficulty in slotting Mr. Cable into the schedule. (1-ER-230–232, 240).

### B. Starbucks Invents a Pretextual Reason to Terminate Cable in 2019 to Avoid Further Compliance with Mr. Cable's Medical Restrictions.

Starbucks terminated Mr. Cable following an incident on or about October 21, 2019 involving Cable's interactions with a person described by the store manager as a homeless drug addict that had requested water at the cash register. (2-ER-311). While attempting to serve this individual, this same person attempted to steal the employee tip jar; Cable intervened and prevented the theft of the tip jar by having a conversation with the individual, recovering the tip jar, and escorting the person from the store. (1-ER-164–67). Despite the benign nature of this incident, Starbucks terminated Mr. Cable's sixteen-year employment for alleging violating Defendant's safety and security policy by intervening to prevent the attempted tip jar theft. (1-ER-229). Starbucks's own human resources representative employee twice communicated that termination was not warranted for this incident. (1-ER-248; 2-ER-321–322, 325).

Three of the four individuals that were involved in the interactive process over the years with Mr. Cable concerning his medical accommodations were involved in the decision to terminate Cable. The facts of this case adduced at trial demonstrated that at least four individuals were involved in Mr. Cable's termination: Michael Koachway, Sheila Schultz, and Tammie Mingus. Ashley Pasqualetti

(who was part of Starbucks's Partner Resources Support Center ("PRSC") which is akin to the human resources department and was also involved in the termination decision process). (1-ER-245–46). Pasqualetti—the only decision-maker who had not been involved in the interactive processes concerning Cable's disability – twice recommended *against* termination. (1-ER-252–253). Her view was disregarded by the other decision-makers, nearly all of whom had been intimately involved in the process of accommodating Cable's medical work restrictions over the years. (1-ER-256).

Internal Starbucks records indicate that Mr. Cable's termination decision was influenced by his medical accommodations. In a July 2018 email, Michael Koachway, the district manager and ultimate decision-maker regarding Cable's termination, expressed his belief that Cable was faking his disability and the need for workplace accommodations. This was corroborated by Tammie Mingus, Starbucks's human resources manager, who testified that Koachway communicated to her that he thought Cable was faking his disability and need for workplace accommodations, and that she actually needed to counsel Koachway on the impropriety of Koachway's focus on Cable's medical accommodations. (2-ER-300–302).

Ample additional evidence demonstrates that Starbucks was looking for excuses to extricate itself from what it considered to be the onerous nature of Cable's medical restrictions. Cable and Starbucks had

reengaged in the interactive process in May 2019, which resulted in additional work restrictions including light duty; limited overhead reaching and pulling; limited hours per workday (4 hours); and no back-to-back work days. (1-ER-153–55). These work restrictions went into effect on June 21, 2019 and were scheduled to continue through December 1, 2019, when they would be revisited through an additional interactive process. (1-ER-241). However, Starbucks terminated Cable on November 22, 2019 – nine days before his interactive process would have been re-initiated. (1-ER-242).

During this time period, Sheila Schultz, who was Starbucks's interactive process point-person, and who consulted on Cable's termination, *asked Cable to quit due to the onerous nature of his workplace accommodations*. (1-ER-138–39, 163–64). Based on Starbucks's own policies and trial testimony, an investigation into Sheila Schultz should have been initiated. (1-ER-140–41). Yet no such investigation relating to Mr. Cable's complaints about this impropriety occurred. (1-ER-237).

### C. The Jury Trial and the Incomplete Verdict Form.

Cable's claims were tried before a jury beginning on October 31, 2023. (2-ER-361). The district court, working with counsel, developed a verdict form and jury instructions that were delivered to the jury. (1-ER-55–61, 106–23).

No party contests (or contested below) that the questions on the verdict form and verdict form instructions were anything less than explicit and unambiguous. (1-ER-55–61). The verdict form contained a total of six questions. There was one question each as to the jury's liability finding on each of the claims Cable submitted to the jury: 1) age discrimination; 2) disability discrimination; 3) retaliation due to Mr. Cable's requests for workplace accommodations or any complaint relating to the interactive process and 4) failure to prevent discrimination. (1-ER-86–94).

The verdict form instructed the jurors that, if the jury answered "yes" to any of question numbers 1 through 3, the jury was required to continue to complete the remainder of the verdict form and to stop completing the verdict form *only* if they answered "no" to *all* of questions one through three. (1-ER-101–103).

The jury instructions and the verdict form worked in tandem. There was no option, given the statutory causes of action, for the jury to find Starbucks liable without awarding *any* damages. To the contrary, the verdict form *and* the jury instructions told the jurors (in instruction 24) that if they found for Cable, they *must* award damages. (1-ER-75, 113). Instruction 28 told the jury that, if it found that the plaintiff did not prove actual damages, then the jury *must* award *nominal* damages. (1-ER-78, 116). The verdict form instructed the jury to proceed to answer the next question (question four) if they answered "yes" to any

of questions 1, 2, or 3 unless after question no. 3, all the responses to questions one through three were answered "no." (1-ER-58). The verdict form had a "Stop here" instruction if the answers to questions 1, 2 and 3 were all "no," with the jury not being required to answer questions relating to damages if the answers to the first three questions were each answered "no." (1-ER-58).

The jury returned a verdict after approximately one hour of deliberations. (1-ER-63). After returning to the courtroom, the court instructed the foreperson to review the verdict form to confirm everything was completed correctly, and the *foreperson confirmed that the first verdict form contained no errors*, before providing the verdict form to the court:

> The Court: What I'd like you to do before you hand it to the bailiff is open up the folder, review it, make sure that it is completely filled out and that it is properly signed and dated.
>
> The Foreperson (Mr. Bower): What do you mean, "Filled out"?
>
> The Court: ***Everything that you intended to fill out.*** You don't say, oops, we forgot something.
>
> The Foreperson (Mr. Bower): **<u>Yea, we're good.</u>**
>
> The Court: Okay. And if you can provide that to the bailiff, please.

(1-ER-126–127, emphasis added).

After the verdict form was handed to the judge, the judge saw that the jury checked "no" for question no. 1 (age discrimination); "no" for question no. 2 (disability discrimination); but for question 3 (retaliation) the jury answered "yes" to Plaintiff's retaliation cause of action under the Fair Employment and Housing Act ("FEHA") which read on the jury form as follows: "Was George Cable's request for workplace accommodations or any complaint relating to the interactive process a substantial motivating reason for Starbucks Corporation's decision to terminate George Cable's employment?" (1-ER-9, 58, 61.)

Next to the check mark of "yes" to question three on the verdict form handed to the court, was the jury foreperson's initials, "DB," (indicating jury foreperson Douglas Bower). (1-ER-56–58). Foreperson Bower also signed and dated the verdict form finding Starbucks liable for retaliation against Cable. (1-ER-9,61). (This first set of answers on the verdict form prior to resubmission shall herein be referred to as the "first verdict form" or "first verdict").

Despite having answered "yes" to Starbucks's liability for retaliation, the district court correctly observed that the jury had failed to check any boxes answering questions number 4 through 6 on the verdict form in contradiction to the verdict form's directions, i.e., "[i]f you answered

'yes' to any of questions 1, 2, or 3, then proceed to question 4" and to then proceed question no. 5. (1-ER-58–59) The remaining questions all related to causation and damages. (1-ER-56–61.)

The court's review of the verdict form was not shared with the parties. The court did not announce the verdict or even tell the parties that the jury had found Starbucks liable for retaliation. (1-ER-127–128).

Instead, the court reviewed the verdict form and, sua sponte, instructed the jury that it needed to return to the jury room and "read through all the questions again" and to "take a look carefully":

> The Court: Okay. I'm going to hand this back to you because I don't think it's completed properly. I think there's something that—unless I'm missing something. Let me take one more look.
>
> Yes, I want you to go back through---I'm going to send the jury back to the jury deliberating room. Please read through all of the questions, particularly, the--, well, I'm just going to say, read through all the questions again. Don't do that here while you're in here. I'm just going to have you do that when you go back. Take a look carefully. You may pass it around and make sure everybody sees it. And then when you've done that, contact the bailiff again to either indicate that you've reached a verdict or if you have some question, you can put that in a form to the Court. Okay? All right.

(1-ER-127–128) The court did not enter the verdict as to liability and did not instruct the jury to complete the last half of the verdict form. Instead, it vaguely suggested to the jury there was something wrong

with its verdict. The court did not tell the parties why it sent the jury back into further deliberation, nor did it seek input from the parties' counsel as to how to approach the incomplete verdict. Nor did the court poll the jurors as to their liability finding; nor did the court give the parties the opportunity to request such a timely polling. (1-ER-127–128). The judge did all of this, in the moment, sua sponte, without informing counsel. (1-ER-126–134.)

Not until responding to post-trial motions did the court claim it acted as it had done because "the court suspected that the jury had erroneously marked the answer to question 3" and for that reason "the Court chose to direct the jury to further consider its answers." (1-ER-9–10). The district court determined that verdict was "inconsistent," and that its belief in an inconsistency allowed the court to invoke the procedures for inconsistent verdicts set forth in FRCP 49(b)(4). (1-ER-3–4, 9, 132)

Approximately twenty minutes after returning to the jury room, at 1:50 p.m., the jury provided a second note indicating, once again, that the jury had reached a unanimous verdict. (1-ER-62). The court indicated that the jury reached a verdict and the second verdict was read in open court. (1-ER-128–131).

Within Jury Note No. 2, and in direct contradiction to the representations made to the court following the completion of the initial verdict form, the foreperson wrote: "Page number 4 was incorrectly

recorded. The answer should have been No. My apologies!" (1-ER-62).

The jury foreperson signed and dated both jury notes. (1-ER-62–63)

(This second set of answers on the special verdict form with question no.

3 changed from a "yes" to a "no" shall herein be referred to as the

"second verdict form" or "second verdict").

After the second verdict, wherein the jury reversed itself as to its

liability finding, the court stated as follows:

> The Court: All right. And I did note that the reason I sent
> you out was that it was inconsistent at one point. And so, as
> you've corrected that, that was your final verdict. Is that---
> and that was your accurate verdict; is that the case? I'm
> going to ask the foreperson.
>
> The foreperson (Mr. Bower): Yes, it is. My apologies.
>
> The Court: No, that—no apologies needed. This is not a
> process that people typically go through. All right. And so,
> the clerk is directed to file and record the verdict.

(1-ER-132).

Prior to directing the clerk to file and record the second verdict, the

district court did not show the parties the completed first or second

verdict form, indicating the change as to the jury's liability findings as

indicated within the verdict form itself. (1-ER-132–134).

The jury was polled after the second verdict. (1-ER-131–132). After

the second verdict, the district court did not inform the parties as to the

jury's complete reversal on question no. 3 relating to plaintiff's retaliation claim (i.e., in which the "yes" was subsequently changed to a "no" in Starbucks's favor). (1-ER-132–134)

### D. Motions after the Trial.

Mr. Cable made several post-trial motions directed at the way the district court handled the incompletely filled-out verdict form. Mr. Cable's motion to conduct juror interviews and for the release of juror contact information to conduct post-verdict juror interviews was denied by the district court. (1-ER-7–16 ) In that order, the court: 1) confirmed that the jury returned the first verdict in favor of Mr. Cable as to his retaliation claim, specifically confirming that the jury marked "Yes" as to question no. 3 for Plaintiff's retaliation cause of action; 2) the court provided *its* evaluation as to Plaintiff's credibility; 3) the court provided its evaluation as to the fact that the court believed the jury incorrectly completed the first verdict form which provided part of the basis for the district court's instructions to the jury upon resubmission, and 4) the court confirmed it resubmitted the verdict form to the jury because it determined the first verdict was inconsistent and that it purportedly followed FRCP 49(b)(4) due to an inconsistent general verdict with interrogatories because the jury did not complete the first verdict form to answer the damages questions based on the verdict form instructions. (1-ER-7–16).

Mr. Cable also filed post-trial motions for a new trial pursuant to FRCP 59 (a) and to alter, or amend the judgment, consistent with the first verdict pursuant FRCP 59(e), which the court denied. (1-ER-2–6). Within these post-trial motions under FRCP 59(a) and FRCP 59(e), the court again reiterated that the jury did, in fact, select "yes" as to Plaintiff's retaliation claim, and that the court determined the first verdict was inconsistent and otherwise reiterated its analysis in its order denying Plaintiff's motion to conduct post-verdict juror interviews. (1-ER-2–6.)

## V.  STANDARDS OF REVIEW

A. A trial court's determination that the jury returned an inconsistent verdict with its answers to special interrogatories and whether its responses can be harmonized is reviewed de novo. See *Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182, 1193 (9th Cir. 2006); *Norris v. Sysco Corp.*, 191 F.3d 1043, 1047 (9th Cir. 1999).

B. The district court's determination that the jury returned a general verdict inconsistent with its answers to special interrogatories is reviewed de novo. See *Wilks v. Reyes*, 5 F.3d 412, 415 (9th Cir. 1993). See *Boone v. United States*, 944 F.2d 1489, 1492 (9th Cir. 1991) (review de novo mixed question of law and fact). The district court's actions

subsequent to such a decision are reviewed for abuse of discretion. *Id*; See *Los Angeles Nut House v. Holiday Hardware Corp.*, 825 F.2d 1351, 1356 (9th Cir. 1987).

C. The court also reviews de novo the district court's reconciliation of the special verdict forms returned by the jury. *California v. Altus Fin. S.A.*, 540 F.3d 992, 1004 (9th Cir. 2008); see also *Flores v. City of Westminster*, 873 F.3d 739, 756 (9th Cir. 2017).

D. Whether the district court properly denied a motion for a new trial pursuant to FRCP 59(a) and whether the district properly denied a motion that the judgment be altered or amended pursuant to FRCP 59(e) is reviewed under an abuse of discretion standard. *Magnussen v. YAK, Inc.*, 73 F.3d 245, 246 (9th Cir. 1996)

E. Jury misconduct is reviewed by the court independently, in the context of the entire record. *United States v. Bagnariol*, 665 F.2d 877, 885 (9th Cir. 1981).

## VI.  ARGUMENT

### A.  THE DISTRICT COURT ERRED IN CLAIMING IT ACTED AS IT DID BECAUSE IT CONCLUDED THERE WAS AN INCONSISTENCY IN THE INITIAL VERDICT FORM.

Before the district court received the jury's initial verdict, it first asked the foreperson to review the verdict form to make sure it was correct. (1-ER-126–127.) The foreperson did so, and handed the verdict

to the bailiff stating he had reviewed it and it was correct. (1-ER-126–127.) The district court noticed the verdict form had not been completely filled out, and it made a unilateral, swift decision to send the jury back for additional deliberations on the *entire* case without any specific guidance other than to "read through all the questions again" and to "review everything carefully." (1-ER-127–128.) The district court refused to accept the judgment of liability, instead choosing to send the jury back to both re-determine liability and, if necessary, damages. In so doing, the court instructed the jury to revisit the verdict it had rendered on liability.

The district court's actions violated Cable's Seventh Amendment rights. The only way that the district court could legally justify returning the entire verdict form back to the jury was if there was an inconsistency in the verdict. *Wilks v. Reyes*, 5 F.3d at 415. It is well-established that when there is tension between a general verdict and written interrogatories, the district court must attempt to sustain the judgment by harmonizing the answers and the verdict. *Id.* A court may exercise its authority under Rule 49(b) and enter judgment in accordance with the answers "only if it is not reasonably possible to resolve the apparent inconsistency between the answers and the verdict." *Id.*, quoting *Los Angeles Nut House v. Holiday Hardware Corp.*, 825 F.2d at 1353–54. We "must attempt to reconcile the jury's

18

findings, by exegesis if necessary . . . before we are free to . . . remand the case for a new trial." *Gallick v. Balt. & Ohio R.R.*, 372 U.S. 108, 119 (1963).

The district court claimed, in its orders on Cable's post-trial motions, that it had followed FRCP 49(b) because it felt there was an inconsistency. It was mistaken. An incomplete verdict is not inconsistent. It is merely not complete, and the court's decision to have the jury revisit the entire verdict constitutes an error with constitutional significance under the Seventh Amendment. *See, e.g., Atl. & Gulf Stevedores, Inc. v. Ellerman Lines Ltd.*, 369 U.S. 355, 364 (1962) ("Where there is a view of the case that makes the jury's answer to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's findings inconsistent results in a collision with the Seventh Amendment"); *Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1178 (5th Cir. 1987) ("Because the answers in the first verdict were irreconcilable, there was no seventh amendment violation by the resubmission of the jury form. The seventh amendment only requires a court to adopt a jury's verdict if the answers to the interrogatories in the verdict are consistent or if there is some view of the case which would make the jury's answers to the interrogatories consistent").

The district court's claim of an inconsistency holds no water. First, the district court, when it sent the jury back, did not share with counsel

that there was an inconsistent verdict or invite counsel to weigh in. The district court made a snap judgment with Seventh Amendment implications which was, frankly, wrong. Second, even in its post-trial orders when the court first claimed its actions were justified by an "inconsistency," such alleged inconsistency was neither explained nor justified relative to the definition used in interpreting FRCP 49(b)(3). In fact, in the district court's post-trial order, the court explained that "[e]ven though the jury answered 'Yes' to Question 3, the jury left blank questions 4 through 6. Given this discrepancy, the Court concluded that it had been presented with an inconsistent Special Verdict Form. Accordingly, the Court followed the procedures set forth in Federal Rule of Civil Procedure 49(b)(4) . . . ." (1-ER-9.) Under de novo review, the district court's retroactive effort at attempting to justify its decision must fail. Cable's Seventh Amendment rights were violated because the verdict had not been "inconsistent."

## B. The Jury's Verdict Was Incomplete, not Inconsistent, For Purposes of the Application of FRCP 49(b).

The district court had it right in its first adjective choice when it described the jury's failure to consider damages a "discrepancy." It was not an "inconsistency."

There is a test developed by the courts for judging whether a special verdict form contains inconsistent answers, which the district court did

not identify, let alone explain its reasoning in why it believed there was an inconsistency in the verdict form below that would comply with the test.

The leading version of the test was set forth by the Fifth Circuit:

> the test to be applied in reconciling apparent conflicts between the jury's answers is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed
>
> by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict ….
>
> If on review of the District Court's judgment we find that there is no view of the case which makes the jury's
>
> answers consistent and that the inconsistency is such that the special verdict will support neither the judgment entered below nor any other judgment, then the judgment must be reversed and the cause remanded for trial anew.

*Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973). "Another way of stating the test is that an inconsistency exists only when a verdict on one claim necessarily negates an element of another claim." Moore's Federal Practice § 49.11. Indeed, the cases finding inconsistencies rely on the issue of whether the claims resolved by the jury were contradictory. *See, e.g., Costilla v. Aluminum Co. of Am.*, 826 F.2d 1444, 1447–1448 (5th Cir. 1987) (case reversed and remanded where findings

on plaintiff's product liability claim and breach of warranty claim were in irreconcilable conflict); *Burris v. Nassau Cty.*, 332 F. Supp.3d 596, 603–604 (E.D.N.Y. 2018) (verdict on intentional infliction of emotional distress claim was not inconsistent with other claims including excessive force, assault, or battery).

A Plaintiff in a FEHA action does not have to prove discrimination in order to be protected from retaliation. See California Civil Jury Instruction ("CACI") No. 2505; (1-ER-70, 111). This case was submitted to the jury based on the CACI jury instructions which permitted it to find retaliation independent of discrimination. (1-ER-70, 111). The discrimination and retaliation claims were therefore independent of one another, and the first verdict form with answers to questions one through three were not inconsistent. If Plaintiff reasonably believed that Defendant's conduct was unlawful due to requested workplace accommodations due to a disability and/or complaints relating to the interactive process, he may prevail on a retaliation claim even if he does not present, or prevail on, a separate claim for discrimination which the jury received instructions on. (1-ER-70, 111). Therefore, the answers to the first three questions relating to liability on the first verdict form were not inconsistent.

The failure of the jury to answer the damage questions on the first verdict form did not make the verdict inconsistent or invalid. In *Zhang v. Am. Gem Seafoods*, 339 F.3d 1020, 1036 (9th Cir. 2003), this court

held that that the federal rule is that "the failure to award damages does not by itself render a verdict invalid." (quoting *Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 806 (9th Cir. 1984); then citing *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 483–85 (1933) (where the Supreme Court refused to disturb such a verdict, even though the petitioner had urged that the verdict should have been set aside as inconsistent on its face).

Here, the district court did not claim that the finding of liability on retaliation was inconsistent with the rejection of liability for one or more of the other claims due to the jury's failure to answer the damages questions. Instead, the alleged inconsistency was simply the failure to complete the form to the end. Even had the district court felt this was an inconsistency (which it plainly is not under the definition of inconsistency), the district court had an easy way to resolve "the inconsistency" – by concluding that the jury found no actual damages and therefore that, as a matter of statute, Cable was entitled to nominal damages.

The jury was instructed by jury instruction number 24 that if it found for Plaintiff, it *must* award damages. (1-ER-75, 113). Jury instruction number 28 guided the jury to award only nominal damages if it found the Plaintiff had not proved damages. (1-ER-78, 116). The jury instruction did not preclude the jury from concluding that "zero" was a nominal sum. While "nominal" for the purpose of damages

awards means "insignificantly small or trifling," in a lay sense it also means "in name only." *Wilks*, 5 F.3d at 416 (citing Am. Heritage Dictionary 845 (2d ed. 1985)). Zero damages would be damages in name only and would reconcile the jury's answer to the special interrogatory with the general verdict. *Id.* Thus, like *Wilks*, because the general verdict and the answers to the special interrogatories can be reconciled, the district court erred by entering judgment in favor of Starbucks Corporation, rather than awarding a judgment for Cable and requiring the jury to answer the remaining damage question(s) on the verdict form. (1-ER-127–128). The general verdict and the answers to the special interrogatories on the first verdict form, including the failure to answer the damages questions, could be reconciled and were not inconsistent, under such an approach.

Cable and his counsel obviously cannot get into the head of the district court, and the district court did not help matters by providing any explanation other than offering the bare assessment that there was an inconsistency. Here, "the court suspected that the jury had erroneously marked the answer to question 3" and for that reason "the Court chose to direct the jury to further consider its answers." (1-ER-9–10). Since the district court suspected that the "yes" checkmark on the retaliation claim had been the product of mistake or oversight, the district court committed a gross violation of Ninth Circuit precedent:

24

> The court may not resolve inconsistencies by declaring that any one question has been incorrectly marked. It may only hypothesize that the jury misunderstood a phrase or misinterpreted a question. The court must assume that the jury consciously and correctly responded to each question and instruction. Assuming each answer is correctly marked, the court must then try to explain the apparent inconsistency in light of the jury instructions and the special verdict as a whole.

*Floyd v. Laws*, 929 F.2d 1390, 1399 (9th Cir. 1991). This Court and the litigants are left to speculate, given the district court's sparing use of words, but *Floyd* nevertheless provides cause for concern regarding the propriety of the district court's actions and reasoning for resubmitting the verdict with the instructions to further consider its answers. (1-ER-9).

As is discussed in the immediately following section, what the district court was confronted with instead was an incomplete verdict, which required different action than that which the court took.

### C. The District Court Was Required to Accept the Liability Verdict and to Ask the Jury to Answer the Remaining Questions on the Verdict Form, or to Declare a Mistrial.

The district court should have entered judgment in favor of Mr. Cable based on the jury's finding in the first verdict form when the jury unanimously found that plaintiff was retaliated against by Starbucks corporation (as indicated by its affirmative "yes" to question no. 3), with

the jury foreperson's initials next to the "yes." (1-ER-3–4, 7–9, 58, 63). It must be remembered, and cannot be emphasized enough, that the foreperson was asked by the court to review the (initial) first verdict *before handing it to the bailiff*, and that the foreperson complied with this directive and affirmed the first verdict form correctly represented the unanimous verdict of the jury. (1-ER-63, 126–127.) This was a definitive verdict as to liability, and the district court then should have instructed the jury to complete the verdict form and answer the damage question(s) consistent with the verdict form instructions to award damages if the jury found that Mr. Cable was retaliated against, or in the alternative, the district court could have declared a mistrial. (1-ER-55–58; 75, 113).

Here, the jury clearly and unequivocally found Starbucks liable for retaliation. The question was checked "yes" on the first verdict form, was initialed by the foreperson, and the first verdict form itself was reviewed and orally *recertified* by the foreperson in open court before it was submitted to the court. This was a definitive liability verdict under any standard and it should have been accepted as such.

Cable's Seventh Amendment rights were violated by resubmitting a definitive liability determination to the jury. Instead, where, as was the case here, "a special verdict does not contain one or more answers requested, it may, unless wholly defective, be accepted for those issues that are resolved. It is 'a special verdict' to the extent findings are made

(assuming the findings are not contradictory)." *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1453 (Fed. Cir. 1984), quoting Wright and Miller, Federal Practice and Procedure: Civil, § 2510, at 520 (1971).

The district court ventured off-path by concluding FRCP 49(b)(3) options for inconsistent verdicts applied to incomplete verdicts. Ninth Circuit law maintains otherwise. Indeed, this Court's decision in *California v. Altus Fin. S.A.*, 540 F.3d 992 expressly adopts an approach for incomplete verdicts that precludes resubmitting the entire verdict form to the jury:

> We review *de novo* the district court's reconciliation of the special verdict forms returned by the jury. In reconciling answered verdict forms, no inference may be drawn from the jury's failure to answer a verdict form. . . **If the answered verdict forms do not dispose of all the issues submitted to the jury, the court must either resubmit the <u>unanswered verdicts</u> to the same jury <u>or</u> declare a mistrial with respect to <u>the unresolved issues</u>**. By contrast, whether to enter judgment consistent with the answered verdict forms, to resubmit an unanswered verdict form to the same jury or to order a new trial with respect to the unresolved issues is within the discretion of the district court.

*Id.* at 1004–05, citations omitted, emphasis added.

The district court flatly failed to follow either of the options this Court set forth in *Altus*, i.e., to resubmit just "the unanswered verdicts" or to declare a mistrial with respect to just "the unresolved issues." *Altus*, *supra*, limits the court's discretion to these options, and these

27

options *only*. *See id.* at 1005 ("whether to enter judgment consistent
with the answered verdict forms, to resubmit an unanswered verdict
form to the same jury or to order a new trial with respect to the
unresolved issues is within the discretion of the district court"). In
reconciling answered verdict forms, no inference may be drawn from the
jury's failure to answer a verdict form. *Iacurci v. Lummus Co.*, 387 U.S.
86, 87–88 (1967) (per curiam). The court's failure to exercise either
option violated Cable's Seventh Amendment rights.

### D. THE DISTRICT COURT'S VAGUE DIRECTIONS TO THE JURY INFLUENCED THE JURY TO CHANGE ITS LIABILITY VERDICT.

Prior to resubmission, the jury: 1) heard no new argument; 2) neither
heard nor received any new evidence; 3) received no changes to the jury
instructions; and 4) received no changes, clarifications or questions
asked or answered related to the verdict form itself. (1-ER-126–128).
The jury was sent back to the jury room with nothing more than the
district court's vague allusion that something the jury did required
correction.

The court's dissatisfaction with the jury's work after the first verdict
was obvious, but the source of that dissatisfaction remained a mystery
to the jurors. The court told the jurors "I'm going to hand this back to
you because I don't think it's completed properly" as if the jurors could

be expected to know what the court meant. (1-ER-127–128.) Its next words did nothing to alleviate the potential confusion of the jurors, as all the court told them was, "I want you to go back through . . . well, I'm just going to say, read through all the questions again. . . . . You may pass it around and make sure everybody sees it. And then when you've done that, contact the bailiff again to either indicate that you've reached a verdict or if you have some question, you can put that in a form to the Court. Okay? All right." (1-ER-127–128.)

The jury's reversal of liability between the initial first and second amended verdicts is highly suspect. It must be remembered that the district court took many safeguards to prevent an erroneous verdict before it received the initial verdict. The first verdict form answer of "yes" was initialed next to the "yes" by the foreperson. (1-ER-56–58.) The first verdict form was signed by the foreperson. (1-ER-9, 61.) And then the court told the foreperson to check over the verdict form before handing it to the bailiff, which the foreperson did and certified orally in open court that he had done the review and that the verdict was correct:

> The Court: What I'd like you to do before you hand it to the bailiff is open up the folder, review it, make sure that it is completely filled out and that it is properly signed and dated.
>
> The Foreperson (Mr. Bower): What do you mean, "Filled out"?

The Court: ***Everything that you intended to fill out.*** You don't say, oops, we forgot something.

The Foreperson (Mr. Bower): **<u>Yea, we're good.</u>**

The Court: Okay. And if you can provide that to the bailiff, please.

(1-ER-126–127, emphasis added). The note from the jury upon resubmission that the first verdict form was incorrectly completed is highly suspect, and more than an adequate basis to declare a mistrial. (1-ER-62). Jury note no. 2 echoed the court's words that the first verdict form was not completed properly prior to resubmission.

Many appellate courts have raised concern over judicial influence of the jury during the course of resubmitted verdict forms. As one court noted, in the context of a verdict form resubmission, "the trial judge is a potent figure indeed. His instructions are lethal. He can communicate his attitude in a thousand ways from a cocked eyebrow to a sideways glance. Those will not be of record. They are not reviewable." *Perricone v. Kansas City Southern Ry. Co.*, 704 F.2d 1376, 1378–79 (5th Cir. 1983). Another court observed that

> [w]hen a trial judge resubmits the completed verdict form to the jury because its answers to the special interrogatories appear inconsistent, the risk of a coerced verdict is substantial, even though the record may be unreflective of anything suggestive in the manner of resubmission. The fact of the resubmission itself may very well communicate to the jury that the trial judge regarded its findings unjust. The

jury may then act not to reconcile the inconsistency but to revise the verdict in accord with its collective perception [**15] of the judge's attitude toward the case.

*Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1263 (5th Cir. 1988).

"The courts, legal practitioners, scholars, and social scientists have long recognized that a judges' behavior, both verbal and nonverbal, may have important effects on trial processes and outcomes. One judge concluded that juries can be easily influenced by the slightest suggestion coming from the court, whether it be a nod of the head, a smile, a frown or a spoken word." (Blanch, Rosenthal, Hart & Bernieri, The Measure of the Judge: An Empirically-Based Framework for Exploring Trial Judges' Behavior, 75 Iowa L.Rev. 653, 653 (March 1990). These concerns are borne out by research:

> "Social-science research, in legal and non-legal contexts suggests that judges likely communicate their impressions and expectations to juries in subtle and unintentional ways, and that the expectations influence juries' decision making. . . . "Compounding this danger, jurors naturally crave the judge's guidance during the decision- making process . . . . Basically, there is little question that judicial influence – even if subtle and unintentional – create risk to a juror's neutral decision making, because jurors search for indications of the judge's views, the judge communicates his or her views, and jurors perceive and follow the judge's views.

Lichstein, Beyond Caperton: "Public Confidence" in Courts and Close Relationships Between Judges and Jurors, 61 Cath.U.L.Rev. 429, 450–51 (Spring 2012).

While these concerns over influence and coercion have not stopped the practice of resubmitting inconsistent verdicts, courts have certainly recognized that there are best practices for courts to follow in order to ameliorate the risks. Notably, what the district court did below is markedly different from what other appellate courts have blessed as proper instructions to a jury upon resubmission to lessen the prospect of implicit judicial influence. *Compare Hafner v. Brown*, 983 F.2d 570, 575 (4th Cir. 1992) ("By resubmitting the verdict, the judge did not coerce the jurors but rather aided them, describing the means of properly translating their previous findings of fact into a legal outcome."); *Nance v. Gulf Oil Corp.*, 817 F.2d at 1179 ("the [improper judicial influence] argument is unpersuasive because the district court carefully cautioned the jury that by resubmitting the verdict form he was not in any way suggesting what decision should be reached nor was he attempting to express favoritism toward one party or the other").

The notion that the jury made a mere mistake should not have been accepted by the district court and should not be accepted by this Court given the foreperson had initialed and signed the initial verdict form and reviewed it and orally affirmed its accuracy at the instruction of the judge before submitting the first verdict form. The district court's vague

directions and generalized allusions of discontent surely unsettled the jury. There is more than enough that is suspect that a new trial should have been ordered based on the unorthodoxies and discrepancies in the verdict process.

### E. THE VERDICT FORM'S CHANGES BETWEEN THE INITIAL AND REVISED VERDICTS RESULTED FROM AN IMPROPER COMPROMISE VERDICT.

The uncomfortable issue of juror misconduct is also implicated by the unorthodox process and result that unfolded at the end of the trial below. Courts have recognized that resubmission leaves open the possibility that the jury will reach an improper "compromise" verdict. *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1058 (9th Cir. 2003), citing to *Riley v. K Mart Corp.*, 864 F.2d 1049, 1054–55 (3d Cir. 1988) *(Riley)*.

In *Riley*, 864 F.2d at 1054–55, the court vacated the judgment and remanded the case for a new trial because the jury award to the plaintiff could not be supported by a set of jury responses which were directly contradictory to and irreconcilable with a prior set of answers. *Riley* held that

> "when a court has no rational reason to explain to a defendant why it is choosing to accept a set of jury answers requiring a verdict for plaintiff over a set of answers

> supporting a verdict for defendant…it must exercise its discretion and order a new trial. Picking one set of answers over another could only result…in an arbitrary result."

*Riley*, 864 F.2d at 1055.

Riley provides further support for the contention that the district court's efforts at reconciliation by arbitrarily choosing to enter judgment based on the amended second verdict form rather than the initial first verdict form was in error. The district court here made no effort to reconcile the first verdict form and made no effort to reconcile the change in liability findings between the first and second verdict forms, prior to and after resubmission. The district court's denial of Mr. Cable's post-trial motions for a new trial and/or to alter or amend the judgment was therefore an abuse of discretion. In this case, the jury had been discharged and the court did not inform the parties of the inconsistency and reversal as to the jury's liability finding as to question no. 3 between the first and second verdict forms. (1-ER-128–134).

The Court reviews alleged jury misconduct independently, in the context of the entire record. *United States v. Bagnariol*, 665 F.2d at 885. In *Shugart v. Cent. Rural Elec. Coop.*, 110 F.3d 1501, 1505–06 (10th Cir. 1997), the court held that to determine whether a jury reached a compromise verdict, the court looks closely at the questions about liability and other circumstances, such as the amount of time spent

deliberating. In this case, the district court indicated that the jury returned with the second verdict after approximately ten minutes upon resubmission. (1-ER-10). Had the first verdict been merely incorrectly recorded, the foreperson would have informed the court when the court instructed him to review the verdict form, rather than confirming the verdict form was correct. (1-ER-126–128). Had the first verdict form been incorrectly completed and the foreperson merely failed to notice the error after being instructed by the district court to confirm its accuracy, the jury would have noticed the error *immediately* upon resubmission in ten seconds, not ten minutes.

Compromise verdicts are a species of juror misconduct. *See Aczel v. Labonia*, 584 F.3d 52, 61 (2nd Cir. 2009) (characterizing compromise verdict as juror misconduct); *see also Eastland Partners Ltd. Partners v. Vill. Green Mgmt. Co. (In re Brown)*, 342 F.3d 620, 633 (6th Cir. 2003) (same); *United States v. Straach*, 987 F.2d 232, 241–42 (5th Cir. 1993) (distinguishing compromise verdict from other types of jury misconduct involving external influences). When a jury renders a compromise verdict, it "subvert[s] the law and contort[s] findings of fact in favor of a desired result." *See California v. Altus Fin. S.A.*, 540 F.3d at 1009 n.17. A compromise verdict demonstrates that the jury failed to give due regard to the evidence. *Nat'l Fire Ins. Co. of Hartford v. Great Lakes Warehouse Corp.*, 261 F.2d 35, 38 (7th Cir. 1958).

To determine whether a verdict is a compromise verdict, a court looks for a close question of liability, a damages award that is grossly inadequate, and any other indicia of compromise apparent from the record. *See*, *e.g.*, *Nat'l R.R. Passenger Corp. v. Koch Indus., Inc.*, 701 F.2d 108, 110 (10th Cir. 1983); *accord D'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 897 (9th Cir. 1977); *Hatfield v. Seaboard A.L.R. Co.*, 396 F.2d 721, 723–24 (5th Cir. 1968).

The jury whiplash between the first and second verdicts that occurred here is a clear indicator of a compromise verdict, and reviewing such an extraordinary about-face, the district court should have ordered a new trial and not accepted the second verdict over the first verdict. *See, e.g. Romberg v. Nichols*, 970 F.2d 512, 521 (9th Cir. 1992) ("When a jury compromises its verdict, its verdict should not stand"); *D'Hedouville v. Pioneer Hotel Co.*, 552 F.2d at 897 (new trial on all issues warranted where circumstances indicate improper compromise verdict); *Carter v. Moore*, 165 F.3d 1071, 1083 (7th Cir. 1998); *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 456 (3rd Cir. 2001) ("the probability that the verdict was tainted by compromise also leads us to favor a new trial on all issues"); *Lucas v. Am. Mfg. Co.*, 630 F.2d 291, 292–94 (5th Cir. 1980) (ordering new trial on all issues where compromise verdict was apparent).

Here, Jury Note No. 2 indicates that the reason for the change on the first and second verdict forms was allegedly because the first verdict

form was incorrectly marked. (1-ER-62). However, this explanation is wholly undermined by the jury's answer of "yes" to question no. 3 on the first verdict form, by the jury foreperson's initials "DB" next to the "yes" on the first verdict form, by the jury foreperson's signature on the first verdict form, by jury note number 1 indicating that the jury had reached a unanimous verdict and by the jury foreperson's review and confirmation in open court that the first verdict was correctly completed. (1-ER-58, 63, 126–128).

Such collective circumstances reveal that the jury's subsequent reversal of its answer to question number 3 was due not to a transcription error on the first verdict form, as the district court erroneously believed which this court must disregard under the holding of *Floyd*, but instead, resulted from jury compromise as to the second verdict combined with the district court's erroneous and confusing judicial instructions upon resubmission. *Floyd*, 929 F.2d at 1398–1400.

This Court is left with the uncomfortable reality that the foreperson either lied to the court after the first verdict (or was grossly negligent in every step of the verdict form process described above); or that he lied on Jury Note No. 2 as to the reason for the changed verdict. Either answer necessitates a new trial.

Under Federal Rule of Civil Procedure 59(a), a district court may grant a motion for a new trial "for any reasons for which new trials have heretofore been granted in actions at law in the courts of the

United States." Juror misconduct may be grounds for a new trial if prejudicial to the losing party. *United States v. Saya*, 247 F.3d 929, 934 (9th Cir. 2001). The court may decide to conduct an evidentiary hearing, subpoena the jurors, or rely on juror affidavits. *See Hard v. Burlington Northern R.R. Co.*, 870 F.2d 1454, 1461 (9th Cir. 1989). Unfortunately, the district court refused to conduct such an evidentiary hearing in denying the motion that would have permitted Cable's counsel to gather the relevant evidence. (1-ER-7–16). The district court expressly concluded that there was "no reasonable probability" of juror misconduct (1-ER-12) which is a conclusion that is simply unsupported by the events described above where a triple-checked and certified verdict form was represented to have been a mere "mistake" upon resubmission. Something very wrong happened that required – at a minimum – further inquiry. Accepting the assertion of a mere mistake without any inquiry at all, especially given the seventh amendment constitutional consequences to Mr. Cable, was prejudicial error.

The judge told the foreperson to double-check the initial verdict before handing it up. And the foreperson did just that, right in front of the court. And then the foreperson orally certified he had double checked the verdict as the court requested *and* that it was accurate. (1-ER-126–127). Suddenly, after the court sent the jury back with the verdict form, the foreperson claimed the form had been previously mistakenly filled out. (1-ER-62). This is not normal and in its best

iteration, it suggests a level of gross negligence and sloppiness that ought to give pause to anyone associated with the justice system. Nevertheless, the district court accepted the second amended verdict form as truth without even asking a question, without even informing let alone consulting the parties of the jury's about-face between the first and second verdict forms, and then subsequently rejected all efforts to understand what had truly happened. This was error that caused a gross violation of Cable's Seventh Amendment rights and that necessitates a new trial.

## VII.  CONCLUSION

For the foregoing reasons, the judgment of the district court in favor of Starbucks Corporation should be reversed, and the case remanded for trial as to all issues, or, in the alternative, the first verdict should be reinstated and entered as a judgment in favor of Mr. George Cable and the case should be remanded for a trial as to damages only.

|  | JCS Law Firm, Inc. |
|  | Respectfully submitted, |
| Dated: July 15, 2024 | By: /s/ Joshua Cohen Slatkin |
|  | Attorney for Plaintiff - Appellant GEORGE CABLE, an individual |

## FORM 17. STATEMENT OF RELATED CASES
## PURSUANT TO CIRCUIT RULE 28-2.6

**9th Cir. Case Number: No. 24-914**

The undersigned attorney or self-represented party states the following:

[ **X** ] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Dated: July 15, 2024                By: /s/ Joshua Cohen Slatkin

Joshua Cohen Slatkin
Attorney for Plaintiff -
Appellant
GEORGE CABLE, an
individual

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **8,810 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**, using TypeLaw.com's legal text editor.

Dated: July 15, 2024               By: /s/ Joshua Cohen Slatkin

                                   Joshua Cohen Slatkin
                                   Attorney for Plaintiff -
                                   Appellant
                                   GEORGE CABLE, an
                                   individual

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **APPELLANT'S BRIEF** with the Clerk of the Court by using the Appellate CM/ECF system on **July 15, 2024**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

|  |  |
|---|---|
|  | JCS Law Firm, Inc. |
| Dated: July 15, 2024 | By: /s/ Joshua Cohen Slatkin |
|  | Joshua Cohen Slatkin |
|  | Attorney for Plaintiff - Appellant GEORGE CABLE, an individual |