No.: 24-914

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

GEORGE CABLE,
*Plaintiff-Appellant*,

v.

STARBUCKS CORPORATION
*Defendant-Appellee*.

On Appeal from the United States District Court for the
Central District of California – Western Division
No. 2:20-CV-10931-JLS-AS
Hon. Josephine L. Staton

---

### APPELLEE'S ANSWERING BRIEF

---

Nicole Golob (SBN 190444)
Lonnie D. Giamela (SBN 228435)
Danielle S. Zobel (SBN 305311)
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501
lgiamela@fisherphillips.com
ngolob@fisherphillips.com
dzobel@fisherphillips.com

*Attorneys for Defendant-Appellee*,
Starbucks Corporation

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................1

JURISDICTIONAL STATEMENT ....................................4

ISSUES PRESENTED.........................................................5

STATEMENT OF THE CASE ............................................6

SUMMARY OF THE ARGUMENT ..................................9

STANDARDS OF REVIEW............................................12

ARGUMENT ...................................................................13

    I.    THE DISTRICT COURT DID NOT ERR IN DETERMINING THAT THE answers in the FIRST-SUBMITTED SPECIAL VERDICT FORM WERE INCONSISTENT WITH EACH OTHER UNDER RULE 49(B)(4). ............................................... 13

        A.    Cable's Narrow Interpretation of "Inconsistency" Is Inaccurate. ...........................................................19

    II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN RESUBMITTING THE INCONSISTENT VERDICT TO THE JURY FOR CLARIFICATION UNDER RULE 49(B)(4). . 23

        A.    The District Court Was Not Obligated To Harmonize The Jury's Findings In The First-Submitted Verdict On Its Own, As The Jury Was Still Available For Resubmission. ...............................................................23

        B.    The District Court's Decision To Resubmit The Verdict To The Jury, As Opposed To Ordering a New Trial, Under Rule 49(b)(4), Was The Correct Choice Under This Circuit's Precedent..............................................25

        C.    It Would Not Have Been Appropriate For The District Court To Enter Judgment On The Retaliation Claim And Instruct The Jury To Complete The Rest Of The Verdict Form. ...................................................................29

III.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
       THROUGH ITS DIRECTIONS TO THE JURY UPON
       RESUBMISSION, NOR DID IT COERCE THE VERDICT. ..... 31

IV.    THE JURY DID NOT RENDER A "COMPROMISE"
       VERDICT OR IMPROPERLY MANIPULATE THE FINAL
       VERDICT ...................................................................................... 35

CONCLUSION ...................................................................................39

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS ........40

FORM 17. STATEMENT OF RELATED CASES PURSUANT
       TO CIRCUIT RULE 28-2.6 ....................................................41

CERTIFICATE OF SERVICE .........................................................42

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Burris v. Nassau County*,
332 F. Supp. 3d 596 (E.D.N.Y. 2018) ........................................................20, 21

*C.B. v. City of Sonora*,
769 F.3d 1005 (9th Cir. 2014) ...............................................................23

*California v. Altus Finance S.A*,
540 F.3d 992 (9th Cir. 2008) ...........................................................24, 30, 31

*Carr v. Wal-Mart Stores, Inc.*,
312 F.3d 667 (5th Cir. 2002) ................................................................24

*Costilla v. Alumini Co. of Am.*,
826 F.2d 1444 (5th Cir. 1987), *withdrawn in part by Costilla v.
Aluminum Co. of Am.*, 835 F.2d 578 (5th Cir. 1988) ........................................20

*D'Hedouville v. Pioneer Hotel Co.*,
552 F.2d 886 (9th Cir. 1977) .........................................................12, 35

*Duk v. MGM Grand Hotel, Inc.*
320 F.3d 1052 (9th Cir. 2003) ............................................... 4, *passim*

*Flores v. City of Westminster*,
873 F.3d 739 (9th Cir. 2017) ...............................................................23

*Floyd v. Laws*,
929 F.2d 1390 (9th Cir. 1991) ..............................................................24

*Hauser v. Kubalak*,
929 F.2d 1305 (8th Cir. 1991) .........................................................19, 26

*Hemmings v. Tidyman's, Inc.*
285 F.3d 1174 (9th Cir. 2002) .........................................................5, 13

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
763 F.3d 524 (6th Cir. 2014) ...............................................................14

*Jarvis v. Comm. Union Assur. Cos.*,
    823 F.2d 392 (10th Cir. 1987) ...............................................................15, 22, 30

*Jones v. Southpeak Interactive Corp.*,
    777 F.3d 658 (4th Cir. 2015) ...............................................................25

*Karl v. Burlington Northern R. Co.*,
    880 F.2d 68 (8th Cir. 1989) ...............................................................32

*Landry v. Offshore Logistics, Inc.*,
    544 F.2d 757 (5th Cir. 1977) ...............................................................33, 34

*Larson v. Neimi*,
    9 F.3d 1397 (9th Cir. 1993) ............................................... 11, *passim*

*Los Angeles Nut House v. Holiday Hardware Corp.*,
    825 F.2d 1351 (9th Cir.1987) ...............................................................13, 29, 30, 32

*McGuire v. Russell Miller, Inc.*,
    1 F.3d 1306 (2d Cir. 1993) ...............................................................24

*Nance v. Gulf Oil Corp.*,
    817 F.2d 1176 (5th Cir. 1987) ...............................................................27, 28, 32, 34

*Nat'l Railroad Passenger Corp. v. Koch Indus., Inc.*,
    701 F.2d 108 (10th Cir. 1983) ...............................................................35

*Nordmann v. Nat'l Hotel Co.*,
    425 F.2d 1103 (5th Cir. 1970) ............................................... 10, *passim*

*Norris v. Sysco Corp.*,
    191 F.3d 1043 (9th Cir. 1999) ...............................................................13

*Pierce v. S. Pac. Transp. Co.*,
    823 F.2d 1366 (9th Cir.1987) ...............................................................38

*Richard v. Firestone Tire & Rubber Co.*,
    853 F.2d 1258 (5th Cir. 1988) ...............................................................26, 36

*Riley v. K Mart Corporation*,
    864 F.2d 1049 (3d Cir. 1988) ...............................................................36, 37, 38

*Royal Cup, Inc. v. Jenkins Coffee Service, Inc.*,
   898 F.2d 1514 (11th Cir. 1990) ........................................................................ 24

*Smith v. Riceland Foods, Inc.*,
   151 F.3d 813 (8th Cir. 1998) ........................................................................... 32

*U.S. v. George*,
   56 F.3d 1078 (9th Cir. 1995) ........................................................................... 5

*Veranda Beach Club v. Western Surety Co.*,
   936 F.2d 1364 (1st Cir. 1991)........................................................ 36, 37, 38

*In re Vivendi Universal, S.A. Sec. Litig.*,
   765 F. Supp. 2d 512 (S.D.N.Y. 2011) .......................................................... 20

*Ward v. City of San Jose*,
   967 F.2d 280 (9th Cir. 1991) ........................................................................... 12

*Wilks v. Reyes*,
   5 F.3d 412 (9th Cir. 1993) ............................................................................... 13

*In re Wright Med. Tech. Inc., Conserve Hip Implant Products
   Liability Litig.*,
   178 F. Supp. 3d 1321 (N.D. Ga. 2016)........................................................ 14

**Statutes**

28 U.S.C. § 1291 ....................................................................................................... 4, 5

28 U.S.C. § 1332(a) ................................................................................................... 4

## FRAP 26.1. DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee, Starbucks Corporation submits that it does not have a parent corporation and no publicly-held corporation owns 10% or more of any of the party's stock.

DATED: September 16, 2024          FISHER & PHILLIPS LLP

By: _____*s/ Danielle S. Zobel*_____
Lonnie D. Giamela
Nicole Golob
Danielle S. Zobel
Attorneys for Defendant/Appellee
Starbucks Corporation

# INTRODUCTION

The District Court is in the best position to determine whether or not the special verdict form, partially completed by the jury, appears inconsistent. Here, upon concluding that the special verdict returned by the jury did not make sense as it either had an error or was missing information, the District Court did not abuse its discretion in returning the special verdict form to the jury, instructing the jury to return to the jury room, review the entire form, and ensure the entire form was completed. After receiving such neutral instructions, the jury returned a verdict in favor of Defendant-Appellee Starbucks ("Starbucks"). Thereafter, the jury was polled, collectively and individually, to confirm the verdict accurately reflected their decision. By way of this appeal, Plaintiff-Appellant George Cable ("Cable") challenges the District Court's conclusion that the special verdict form was inconsistent pursuant to Federal Rules of Civil Procedure section 49(b)(4), and claims the District Court abused its discretion in denying a Motion for New Trial, abused its discretion in denying a Motion to Amend the Judgment, and abused its discretion in resubmitting the inconsistent verdict to the jury. Even under the *de novo* standard, the District Court's conclusion that the verdict was inconsistent should not be disturbed.

After a four-day jury trial on Cable's claims that Starbucks engaged in age discrimination, disability discrimination, retaliation for requesting workplace

accommodations, and failure to take steps to prevent discrimination, the jury returned a special verdict form to the District Court. Upon reviewing the form, the District Court simply instructed the jury to go "back to the jury deliberating room. Please read through all of the questions, particularly, the – well, I'm just going to say, read through all of the questions again." Excerpts of Record ("ER") 1-ER-127:12-22. Indeed, the District Court concluded that the special verdict form was inconsistent pursuant to Federal Rule of Civil Procedure section 49(b)(4) because the jury answered "No" to the first two questions regarding liability (age and disability discrimination), answered 'yes" to the third question regarding liability (retaliation), but left the fourth, fifth and sixth questions "blank", concerning liability (failure to prevent) and damages. *See* 1-ER-9. The District Court engaged in the following, appropriate reasoning, all of which should be upheld:

- The District Court immediately recognized the inconsistency within the special verdict form. Given the blank remainder of the form, the jury appeared to have made an error in answering question 3 **or** failed to complete the remainder of the form. Under either circumstance, given the jury was not yet excused, the form was properly resubmitted to the jury for completion;

- The District Court applied Federal Rule of Civil Procedure Rule 49(b)(4) and, under the dictates of that rule, resubmitted the inconsistent verdict to

2

the jury for clarification (*See* 1-ER-9–10);

- Upon resubmitting the verdict to the jury, the District Court took care to only ask the jury to return to the deliberating room; read through all of the questions again; and return upon reaching a verdict or if they had additional questions. 1-ER-10. The District Court's comments were neutral and did not provide any editorializing as to why the verdict was inconsistent or coercion as to what the jury should do;

- The jury resubmitted the verdict, which crossed out the initially-written "Yes" answer to question 3, and denoted an "X" mark next to "No." 1-ER-58. The jury then indicated in jury note 2 that it had reached a unanimous verdict, even going so far as to write "Page Number 4 was incorrectly recorded. The answer should have been <u>No</u>. My apologies!" 1-ER-62. The District Court, satisfied that this was in no way a "compromise" or manipulated verdict, accepted the verdict and entered judgment.

Neither the District Court nor the jury engaged in wrongdoing that warrants reversal. The District Court engaged in the commonplace process of recognizing an inconsistency in the verdict and returning it to the jury for clarification. The jury's clarification does not smack of any nefarious conduct, and further underscores the logical conclusion—evident from the remainder of the verdict, and the evidence

FP 52229434.1

presented at trial—that the jury did not find Starbucks liable for any of Cable's claims. Indeed, if Cable's arguments are to be believed, all eight jurors lied under oath so they could go home early and beat the traffic despite being empaneled to hear the evidence, follow the law, and truthfully testify whether or not the final verdict read by the Courtroom Deputy was in fact their verdict. As confirmed by this Court in *Duk v. MGM Grand Hotel, Inc.* 320 F.3d 1052, 1058 (9th Cir. 2003), a case where the jury was asked to return to the jury deliberation room to correct the special verdict form, "citizen jurors will properly perform the duties entrusted them and will not construe resubmission as an invitation to subvert the law and contort findings of fact in favor of a desired result." The District Court properly applied this standard and accordingly, Starbucks requests that this Court affirm the District Court's entry of final judgment in favor of Starbucks.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction under 28 U.S.C. § 1332(a) because Cable and Starbucks are citizens of different states and the matter in controversy exceeded the sum of $75,000.00, exclusive of interest and costs.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the District Court's entry of final judgment in favor of Starbucks, entered on December 11, 2023, is a final order that disposed of all of Plaintiff's claims. 1-ER-17–18.

This Court also has jurisdiction over (1) the District Court's denial of

4

Plaintiff's Federal Rule of Civil Procedure Rule ("Rule") 59(e) motion to alter or amend the final judgment, *See Hemmings v. Tidyman's, Inc.* 285 F.3d 1174, 1195 (9th Cir. 2002); and (2) the District Court's denial of the motion for new trial under Rule 59(a). *See U.S. v. George*, 56 F.3d 1078, 1083 (9th Cir. 1995); 28 U.S.C. § 1291.

## ISSUES PRESENTED

(1) Whether the District Court erred when it determined that the jury's first-submitted special verdict form—which initially marked "Yes" in response to the question of whether Starbucks retaliated against Cable, yet left blank the remaining questions of liability on failure to prevent discrimination, causation, and damages—was inconsistent under Rule 49.

(2) Whether the District Court erred when it resubmitted the special verdict form to the jury for further clarification, pursuant to Rule 49.

(3) Whether the District Court improperly coerced or influenced the jury to change its special verdict upon resubmission.

(4) Whether the jury rendered a "compromise verdict" when it returned the special verdict form after resubmission, checking "No," in response to the question of whether Starbucks retaliated against Cable, also indicating from the jury foreperson, in writing, that the initial "answer should have been <u>No</u>."

## STATEMENT OF THE CASE

Cable sued Starbucks, asserting claims of (1) age discrimination; (2) disability discrimination; (3) retaliation; and (4) failure to prevent discrimination, all under the California Fair Employment and Housing Act ("FEHA"). 2-ER-264–65.

A four-day jury trial was held from late October 2023 to early November 2023. *See* 1-ER-8. At the conclusion of the presentation of evidence, the jury was presented with a special verdict form that contained six questions. *See* 1-ER-55–61. The first four questions related to liability for Cable's discrimination, retaliation, and failure to prevent claims. 1-ER-55–59. The fifth and sixth questions related to causation and damages, respectively. 1-ER-60–61.

After deliberating for fifty minutes, from 12:20 P.M. to 1:09 P.M. on November 6, 2023, the fourth day of trial, the jury returned the special verdict. 1-ER-8; 1-ER-61. The first three questions were answered as follows:

1.  Was George Cable's age a substantial motivating reason in Starbucks Corporation's decision to terminate George Cable's employment?

    ___Yes
    _X_ No

2.  Was George Cable's disability a substantial motivating reason in Starbucks Corporation's decision to terminate George Cable's employment?

    ___ Yes
    _X_ No

>    3.    Was George Cable's request for workplace accommodations or any complaint relating to the interactive process a substantial motivating reason for Starbucks Corporation's decision to terminate George Cable's employment?
>
>          _X_ Yes
>          ___No

1-ER-56–58.

The special verdict form provided the following instructions after question 3:

> If you[] answered "No" to **<u>all</u>** of questions 1, 2, and 3, please stop here, answer no further questions, and have the presiding juror sign and date at the bottom of the verdict form.
>
> If you answered 'yes' to **<u>any</u>** of the questions 1, 2, or 3, then proceed to Question 4.

1-ER-58 (emphasis in original).

Although the jury answered "Yes" to question 3, it left blank the remainder of the special verdict form; that is, questions 4 through 6. 1-ER-59–61.

Upon review of the verdict, the District Court determined it had encountered an inconsistent verdict that would need to be resubmitted to the jury for clarification. 1-ER-9. The entirety of the District Court's comments to the jury regarding resubmission of the verdict are as follows:

> Okay. I'm going to hand this back to you because I don't think that it's completed properly. I think there's something that may -- unless I'm missing something. Let me take one more look.
>
> Yes, I want you to go back through -- I'm going to send the jury back to the jury deliberating room. Please read through all of the

7

questions, particularly, the -- well, I'm just going to say, read through all of the questions again. Don't do that here while you're in here. I'm just going to have you do that when you go back. Take a look carefully. You may pass it around and make sure everybody sees it. And then when you've done that, contact the bailiff again to either indicate that you've reached a verdict or if you have some question, you can put that in a form to the Court. Okay? All right.

1-ER-127:12-128:4.

At no point during the District Court's remarks did either party object or respond to the court's comments. *See id.*

Ten minutes later, the foreperson delivered a note to the bailiff, confirming that the jury had reached a unanimous verdict. 1-ER-10. The note also read, "Page number 4 [Question 3] was incorrectly recorded. The answer should have been <u>No</u>. My apologies!" 1-ER-62 (emphasis in original). The new special verdict form submitted to the District Court scratched out the "X" marked next to the word "Yes" and placed an "X" next to the word "No," with the change initialed and dated by the jury foreperson. 1-ER-58. This was the only change to the special verdict form, the remainder of which remained blank, consistent with the instructions after questions 1-3,: "[i]f you[] answered "No" to all of questions 1, 2, and 3, please stop here, answer no further questions, and have the presiding juror sign and date at the bottom of the verdict form." 1-ER-59–61.

Thereafter, the District Court confirmed with each juror individually that their verdict was accurate. 1-ER-131:12–132:17. Additionally, the District Court had the

following exchange with the jury foreperson, in which the foreperson apologized in open court, acknowledging the inconsistency in the first verdict and acknowledging the resubmitted verdict was accurate:

> **THE COURT:** All right. And I did note that the reason I sent you out was that it [the verdict] was inconsistent at one point. And so, as you're correct that, that was your final verdict. Is that – and that was your accurate verdict; is that the case? I'm going to ask the foreperson.
>
> **THE FOREPERSON**: Yes, it is. My apologies.

1-ER-132:10–17.

Thereafter, the District Court entered final judgment on December 11, 2023, and denied Cable's successive post-trial motions: (1) Request for an Order to Conduct Post-Verdict Interviews of Jurors; (2) Motion to Alter or Amend the Judgment; (3) and Motion for a New Trial. 1-ER-2–18. The instant appeal followed on February 20, 2024. 2-ER-335–36.

## SUMMARY OF THE ARGUMENT

Cable challenges the District Court's entry of final judgment in favor of Starbucks, consistent with the jury's special verdict form, as well as the District Court's denial of his motion to alter or amend the judgment or motion for new trial.

***The District Court did not err by concluding there was an inconsistency in the first-submitted verdict pursuant to Rule 49(b)(4).*** This conclusion should be upheld as the inconsistency is evident when a comparison is made between the a) "Yes" answer to liability question 3 and b) the "blank" entries on the remainder of

9

the form. In other words, either the jury mistakenly checked "Yes" instead of "No" to liability question 3 and intended to leave the remainder of the form blank, or the jury mistakenly left the remainder of the form blank and needed to complete the verdict form. *Nordmann v. Nat'l Hotel Co.*, 425 F.2d 1103, 1106 (5th Cir. 1970) (determining a verdict was inconsistent under Rule 49(b)(4) where the answers to the initial verdict created a conflict between the negligence (liability) answer and the contributory negligence and damages answers and did not comport with the verdict instructions).

***Resubmitting the entire verdict form to the jury to review and ensure completeness was entirely proper.*** Cable's suggestion, that the District Court should have instead entered judgment in Cable's favor, then asked the jury to complete only questions 4 – 6, *see* AOB 25-26, fails to give the jury the ability to cure any likely inconsistency in the judgment. The District Court's actions permitted the jury to clarify its decision and finalize the verdict form consistent with its deliberations. In fact, Rule 49(b)(4), which the District Court properly applied, prohibits the District Court from entering judgment, and provides the Court only two options: 1) resubmitting the verdict to the jury for clarification; or 2) ordering a new trial. Precedent in this Circuit confirms that resubmission of the form to the jury, and not a mistrial, is the proper course of action. *Duk*, 320 F.3d at 1057-58 ("[t]he Ninth Circuit has endorsed resubmission of special verdicts, and, when the jury is still

10

available, resubmitting an inconsistent verdict best comports with the fair and efficient administration of justice.") Further, resubmission to the jury is preferred to the more drastic remedy of ordering a new trial, particularly when the jury has not yet been dismissed. *Larson v. Neimi*, 9 F.3d 1397, 1402 (9th Cir. 1993). Cable's request for a piecemeal granting of judgment (as to the retaliation claim) and resubmission of the remainder of the questions to the jury, is not supported by any authority. The District Court properly resubmitted the entire verdict to the jury, and doing so was not an abuse of its discretion.

*The District Court did not make any comments or suggestions that could conceivably improperly influence the jury to change its decision.* The District Court simply directed the jury to return to the deliberation room and review the answers to all questions. *See* 1-ER-127:12–128:4. No comments were made to suggest what the mistake was, or what questions should be the focus of the discussions in the jury room. *See id.* There is no authority to suggest the District Court was obligated to provide any further guidance; indeed, doing so would likely lead to judicial influence.

*The jury's modification of its' "Yes" answer to a "No" answer does not constitute a "compromise" verdict or demonstrate any manipulation.* In order to determine a jury's decision was a "compromise verdict," courts must find a close question of liability, a grossly inadequate damages award, and other circumstances

such as length of jury deliberation, suggesting that the verdict was the result of prejudice or an improper compromise. *D'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 887 (9th Cir. 1977). None of the trappings of a "compromise verdict" are present here, as the jury did not change its lack of damages or otherwise manipulate the liability question to suit a close question of liability. Rather, as evidenced by the circumstantial evidence, including the juror's note acknowledging the error in answering question 3; the acknowledgment in open court of the error; and confirmation of the accuracy of the final verdict, *see* 1-ER-62, 1-ER-132-10–17, the jury made a discrete clerical error in selecting "Yes" to question 3 and updated the verdict exclusively as to that question. Had the jury meant to answer "Yes" to question 3, it would have, upon resubmission, answered questions 4 – 6. The jury did not do so, and thus the verdict and resulting judgment should stand as issued.

## STANDARDS OF REVIEW

A motion for new trial under Rule 59(a) is typically reviewed by this Court under the abuse of discretion standard. *Kode v.* Carlson, 596 F.3d 608, 612 (9th Cir. 2010). However, when a motion for new trial is based on an alleged inconsistency in the jury verdict, "the question is whether the verdict can be reconciled on any reasonable theory consistent with the evidence." *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991) (citing *Ortiz v. Bank of Am. Nat'l Trust & Savings Ass'n.*, 852 F.2d 383, 388 (9th Cir. 1987). An order denying a motion to amend or alter the

judgment under Rule 59(e) is reviewed under the abuse of discretion standard. *Hemmings*, 285 F.3d at 1195.

This Court reviews de novo a district court's determination whether the verdict is inconsistent with the special interrogatories. *Norris v. Sysco Corp.*, 191 F.3d 1043, 1047 (9th Cir. 1999); *Wilks v. Reyes*, 5 F.3d 412, 415 (9th Cir. 1993). After determining that a verdict is inconsistent with special interrogatories, the District Court can opt to resubmit the inconsistent verdict to the jury for clarification, particularly when the jury is still available. *See Duk*, 320 F.3d at 1057–58 (9th Cir. 2003). The District Court's decision to resubmit is reviewed for an abuse of discretion. *Id.* The District Court's actions subsequent to such a decision to resubmit an inconsistent verdict are reviewed for abuse of discretion. *See Los Angeles Nut House v. Holiday Hardware Corp.*, 825 F.2d 1351, 1356 (9th Cir.1987) (within trial court's discretion to enter judgment consistent with answer to special interrogatory, reconvene jury to resolve conflict or order new trial).

## ARGUMENT

I. **THE DISTRICT COURT DID NOT ERR IN DETERMINING THAT THE ANSWERS IN THE FIRST-SUBMITTED SPECIAL VERDICT FORM WERE INCONSISTENT WITH EACH OTHER UNDER RULE 49(B)(4).**

The first issue before this Court is whether the District Court properly

determined that the initially-returned jury verdict was inconsistent under Rule 49. The District Court did not err in this conclusion.

An "inconsistency" in a special verdict interrogatory can slot into one of two scenarios: "(1) when the answers are consistent with each other but one or more is inconsistent with the verdict, and (2) when the answers are inconsistent with each other and one or more is also inconsistent with the verdict." *Nordmann*, 425 F.2d at 1106; *see also* Fed. R. Civ. P. 49(b)(3) – b(4).

Rule 49(b) provides a district court with two options after determining that a jury's general verdict is inconsistent with its answers to special interrogatories. *See Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 538 (6th Cir. 2014). Pursuant to Rule 49(b)(3), "[i]f the interrogatory answers are 'consistent with each other but one or more is inconsistent with the general verdict,' the District Court has the option of either approving a judgment, directing the jury to think harder about its answers, or ordering a new trial.' *Id.* (citing Fed.R.Civ.P. 49(b)(3).) Under Rule 49(b)(4), when interrogatories in a special verdict "are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial." Fed. R. Civ. P. 49(b)(4); *see also In re Wright Med. Tech. Inc., Conserve Hip Implant Products Liability Litig.*, 178 F. Supp. 3d 1321, 1338 (N.D. Ga. 2016) ("Federal Rule of Civil Procedure 49(b)(4) authorizes

14

a court faced with inconsistent answers to questions on a verdict form to exercise its discretion to direct the jury to further consider the answers it gave and the verdict reached.")

What makes a verdict "inconsistent" is not expressly defined. Federal Rules of Civil Procedure, Rules & Commentary, fn. 47 (2024 ed.) ("Because verdict consistency is a question of applied logic, it is a very fact-specific exercise that does not lend itself to the development of broad principles.") An inconsistent verdict under Rule 49(b) can take many forms, including the scenario presented here, where the jury filled out the liability special interrogatory in the special verdict, but left blank the remainder of the verdict form, in contravention of the verdict form's express instructions. *See Jarvis v. Comm. Union Assur. Cos.*, 823 F.2d 392, 393-95 (10th Cir. 1987) (noting that it was "fundamentally inconsistent" for the jury to have found that the defendant breached a contract but left blank the amount of damages section on the verdict form).

The District Court's deeming of a verdict "inconsistent" is appropriate where a jury's liability answer and damages answer, on a special verdict form, cannot be reconciled. In *Nordmann v. National Hotel Co.*, 425 F.2d at 1104, the plaintiffs sued a hotel for a robbery and assault they experienced in their hotel room. The court resubmitted the verdict to the jury for further consideration after determining that the answers in the verdict were inconsistent with one another and with the general

verdict. *Id.* at 1105. Specifically, the jury was instructed that a "No" answer to the first interrogatory (regarding negligence) would end the case and that the questions on damages should only be answered if the questions on negligence and proximate cause were answered "Yes." *Id.* at 1106. Regarding the question of whether the hotel was negligent, the jury initially circled "Yes" in pencil; then circled "No" in pencil; and then wrote "No" in ink. *Id.* For the next question, regarding whether the hotel's negligence was a proximate cause of the plaintiffs' injuries, the jury circled "Yes" in pencil but then erased the "Yes" answer. *Id.* The jury then went on to answer that neither plaintiff was contributorily negligent and assessed damages for both plaintiffs. *Id.* The District Court determined that the answers to questions (proximate cause and contributory negligence) were inconsistent with the "No" answer to the question of whether the hotel was negligent. *Id.* The District Court also determined that the "No" answer to the negligence question was inconsistent with the answers to the questions regarding damages awarded to each plaintiff. *Id.* Accordingly, the District Court judge declined to accept the verdict, stating to the foreman: "the verdict is not consistent. I am going to reissue my instruction to you, and ask you to go back and reconsider it." *Id.* at 1105. Thereafter, the jury returned the verdict, which stated that, "Yes," the hotel was negligent; the negligence was a proximate cause of the plaintiffs' injuries; neither plaintiff was contributorily negligent; and both plaintiffs were entitled to damages -- $16,000 and $5,000,

16

respectively. *Id.* The District Court accepted this newly-rendered, consistent verdict and entered judgment. *Id.*

The hotel moved for a mistrial, which the District Court denied, explaining the aforementioned inconsistency. *Id.* The hotel then appealed, claiming that the jury initially determined that it was not negligent, and that judgment should have been entered for it on that verdict. *Id.* The Fifth Circuit affirmed the District Court's entry of judgment on the jury verdict, reasoning that the District Court was presented with a Rule 49(b)(4) situation, where the answers in the verdict were inconsistent with one another and the general verdict, and that the District Court "properly chose to return the jury for further consideration." *Id.* at 1106. Notably, the Fifth Circuit mentioned, "[t]he positive answers of the jurors when individually polled leave no doubt as to their intention or genuine verdict." *Id.*

The facts here—and the District Court's decisionmaking—are on all fours with *Nordmann*. As in *Nordmann*, the special verdict here instructed the jury that answering "No" to all of the first three questions would end the case. 1-ER-58 ("[i]f you[] answered "No" to **all** of questions 1, 2, and 3, please stop here, answer no further questions, and have the presiding juror sign and date the bottom of the verdict form." [emphasis in original]); *Nordmann*, 425 F.2d at 1106. Likewise, as in *Nordmann*, the special verdict advised that questions on damages should only be answered if the discrimination, retaliation, failure to prevent, *and* causation

17

questions were answered. 1-ER-60. Indeed, question 5, regarding causation, which could only be reached by answering questions 1-4 (regarding liability for discrimination, retaliation, and failure to prevent), instructed:

> 5. Was Starbucks Corporation's decision to terminate George Cable's employment a substantial factor in causing harm to George Cable?
> ___ Yes
> ___ No
>
> If you answered "No" to question 5, please stop here, answer no further questions, and have the presiding juror sign and date the bottom of the verdict form.
>
> If you answered "Yes" to question 5, then proceed to Question 6 [damages].

1-ER-60.

Here, as in *Nordmann*, the jury's responses did not adhere to the instructions contained within the special verdict, and the District Court was confronted with irreconcilably inconsistent answers. In the first-submitted verdict, the jury answered "No" to questions 1 and 2, regarding whether Starbucks discriminated against Cable on the basis of his age or disability, yet answered "Yes" to the question of whether Starbucks retaliated against Cable. 1-ER-56–58. Thereafter, the jury left the remainder of the verdict form—questions 4-6 regarding failure to prevent, causation, and damages—blank. 1-ER-59–61. The jury's leaving blank the remainder of the verdict is equivalent to the jury confusion the District Court in *Nordmann* deduced, when the jurors initially selected "No," the hotel was not negligent, yet went on to

18

answer the remaining questions regarding causation; contributory negligence; and damages. *Nordmann*, 425 F.2d at 1106. The court in *Nordmann* could not have reconciled a finding that the hotel was not negligent with determinations of causation and damages; particularly where the verdict form expressly stated that the case would "end" if the answer to the negligence question was "No." So too here. In the first iteration of the verdict, it appeared as though the jury failed to reach a conclusion on the failure to prevent claim, as well as causation and damages. Thus, as in *Nordmann*, the District Court properly concluded that the answers were inconsistent with one another under Rule 49(b)(4). 1-ER-9.

## A. Cable's Narrow Interpretation of "Inconsistency" Is Inaccurate.

Cable advances a number of unavailing arguments as to why the first-submitted verdict form was not "inconsistent" under Rule 49(b). Cable employs an overly-narrow definition of what constitutes an inconsistent verdict, which this Court should reject.

First, Cable confuses the meaning of "inconsistency," claiming that the verdict form here was "incomplete" or "blank," and therefore not inconsistent. AOB 20. District courts can properly resubmit the case to the jury under Rule 49(b) for "incomplete, confusing, or inconsistent" verdict forms, such as the first-submitted form here. *Hauser v. Kubalak*, 929 F.2d 1305, 1308 (8th Cir. 1991) ("we cannot say that the District Court abused its discretion in rejecting the first and second verdict

19

forms as unacceptable or incomplete.")  The District Court did so here, correctly reasoning that the jury erroneously marked its response to question 3 as "Yes" instead of "No."  1-ER-9.

Second, Cable incorrectly contends that "inconsistency exists only when a verdict on one claim necessarily negates an element of another claim."  AOB 21. This definition of inconsistency has been rejected as "overly narrow" in at least one case.  *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 549 (S.D.N.Y. 2011) (rejecting argument that jury's finding on one claim must negate essential element of another claim in order to be an inconsistent verdict as "an overly narrow definition.")  Moreover, the cases Cable cites for this proposition are either incorrectly cited or are distinguishable.  In *Costilla v. Aluminum Co. of Am.*, 826 F.2d 1444, 1447 (5th Cir. 1987), *withdrawn in part by Costilla v. Aluminum Co. of Am.*, 835 F.2d 578 (5th Cir. 1988), the jury concluded in its verdict that the product was not defective, yet also concluded that the product was "unfit for the ordinary purposes for which it was intended."  While the Fifth Circuit initially concluded that the findings on the products liability and breach of warranty claims were inconsistent, *id.*, the Fifth Circuit later withdrew that portion of its opinion, concluding that the jury's finding on the products liability and breach of warrant claims were properly resolved.

In *Burris v. Nassau County*, 332 F. Supp. 3d 596 (E.D.N.Y. 2018), a case

20

relied upon by Cable to support his improperly narrow interpretation of "inconsistency," the jury returned a defense verdict on all counts except for intentional infliction of emotional distress ("IIED") against a detective. *Id.* at 599. The jury also awarded $1 in nominal damages on the IIED claim. The district court concluded that this verdict was not inconsistent, as the IIED claim and the other claims (excessive force, assault, or battery) did not have the same elements, as the non-IIED claims needed to be tethered to "tortious physical conduct." *Id.* at 604. The jury instructions also reflected this. *See id.* The district court also concluded that the nominal damages awarded on the IIED claim was consistent with the jury's decision to find no liability on the other claims. *Id.* at 605.

*Burris* is distinguishable on several grounds. First, in *Burris*, the IIED and non-IIED claims did not have complete overlap. Here, by contrast, while Cable's FEHA discrimination and retaliation claims do not have complete overlap, they both include as an element that the defendant's conduct was a "substantial factor in causing [name of plaintiff]'s harm." *Compare* CACI § 2540 (disability discrimination), *with* CACI § 2505 (retaliation). Second, in *Burris*, the jury did not fail to answer key element-based interrogatories in their verdict. Here, by contrast, the jury left blank on the verdict form the "causation" element (question 5). Third, in *Burris*, the jury awarded $1 in nominal damages, suggesting that "whatever conduct [the jury] thought may have constituted IIED was inconsequential." *Burris*,

21

332 F. Supp. 3d at 604. Here, the jury conspicuously left blank the causation and damages questions. The jury was instructed that it could award nominal damages if it so desired. 1-ER-78 ("[i]f you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.") Had the outcome that Cable advocates for here—the jury found for liability on retaliation, but awarded nominal damages—actually taken place, the jury would have indicated nominal damages where indicated, or even written "$0" or "$1," as instructed. *Jarvis*, 823 F.2d at 395 ("[i]f [finding an absence of damages] had been the jury's determination, it would have returned the form of verdict finding for plaintiff with a zero in the blank provided for the amount of damages. . . .") It did not fill out the verdict form this way. And had the jury intended to hold Starbucks liable for retaliation, it would have completed, as instructed in the verdict form, questions 4 (failure to prevent) and 5 (causation), as well as damages in question 6. Cable has no explanation for why the jury left blank questions 4 and 5, underscoring that in doing so, the jury made an erroneous, clerical error, creating an inconsistency that required reconciliation, as the District Court correctly concluded. 1-ER-9.

22

**II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN RESUBMITTING THE INCONSISTENT VERDICT TO THE JURY FOR CLARIFICATION UNDER RULE 49(B)(4).**

The next issue is whether the District Court abused its discretion when it resubmitted the special verdict to the jury for clarification. *Larson*, 9 F.3d at 1402 (superseded by rule on other grounds by *C.B. v. City of Sonora*, 769 F.3d 1005 (9th Cir. 2014) ("[t]he district court's decision to resubmit a verdict to the jury for clarification is reviewed for abuse of discretion") (citing *Mateyko v.* Felix, 924 F.2d 824, 827 (9th Cir. 1990)); *Duk*, 320 F.3d at 1057-58). It did not.

**A.    The District Court Was Not Obligated To Harmonize The Jury's Findings In The First-Submitted Verdict On Its Own, As The Jury Was Still Available For Resubmission.**

Cable incorrectly suggests that the District Court was obligated to reconcile any perceived inconsistency in the jury's findings on its own or, if it was not able to, declare a mistrial. *See* AOB 25-26. This was not the prudent choice, as the District Court recognized, as the jury was still impaneled such that the District Court could resubmit the verdict to it for clarification.

A district court may endeavor to "harmonize a jury's special verdict answers, 'if such be possible under a fair reading of them.'" *Flores v. City of Westminster*, 873 F.3d 739, 756 (9th Cir. 2017). "A court is also obligated to try to reconcile the

jury's findings by exegesis, if necessary." *Floyd v. Laws*, 929 F.2d 1390, 1396 (9th Cir. 1991) (citing *Gallick v. Baltimore & O.R.R. Co.*, 83 S. Ct. 659, 666 (1963)). The District Court is tasked with searching for a "reasonable way to read the verdicts as expressing a coherent view of the case," considering relevant factors, including the jury instructions. *See California v. Altus Finance S.A*, 540 F.3d 992, 1004 (9th Cir. 2008) (citing *Toner v. Lederle Labs.*, 828 F.2d 510, 512 (9th Cir. 1987)). District courts have considerable latitude in interpreting the jury's findings. *See Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 670 (5th Cir. 2002); *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1311 (2d Cir. 1993); *Royal Cup, Inc. v. Jenkins Coffee Service, Inc.*, 898 F.2d 1514, 1519 (11th Cir. 1990).

In *Larson*, the appellant argued that the District Court judge abused his discretion because he did not first try to reconcile the inconsistent special verdict answers. 9 F.3d at 1397. This Court rejected this argument, stating that "while, as Neimi argues, we *have* said that the trial judge should try to reconcile the special verdict, that was **in the context of a case where the jury had already been discharged** . . . [t]hus, resubmission was not possible." *Id.* at 1402. (emphasis added and internal citation omitted). This Court went on to recognize: "[o]f course, it makes a good deal of sense to require trial and appellate courts to do all they can to reconcile special verdict answers when the only alternative is ordering a new trial. However, when the very body that issued the ambiguous or inconsistent verdict is

still available to clarify its meaning, a request that it do so comports with common sense as well as efficiency and fairness." *Id.*

In *Larson*, this Circuit thus properly concluded that the district court did not abuse its discretion when it resubmitted to the jury, as opposed to reconciling the verdict on its own. In this case, because the jury had not yet been discharged at the time the District Court recognized the inconsistency in the verdict, it was proper for the district court to exercise its discretion to resubmit to the jury.

**B.** **The District Court's Decision To Resubmit The Verdict To The Jury, As Opposed To Ordering a New Trial, Under Rule 49(b)(4), Was The Correct Choice Under This Circuit's Precedent.**

Federal Rule of Civil Procedure 49(b)(4) (emphasis added), which the District Court applied, provides: "When the answers [in the special verdict] are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court *must direct the jury to further consider its answers* and verdict, *or must order a new trial*."

Relevant here, a verdict that is facially incomplete, ambiguous or invalid requires the district court to determine whether to resubmit the case to the jury or order a new trial. *See, e.g.*, *Jones v. Southpeak Interactive Corp.*, 777 F.3d 658, 674 (4th Cir. 2015); *see also*, Fed. R. Civ. P. 49(b)(3) and (4). Particularly, as was the case here, where the jury is still available, resubmission is "the most sensible

25

course." *Duk*, 320 F.3d at 1057; *see also Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258 (5th Cir. 1988) (resubmission to jury was appropriate where jury ignored express "stop here" instructions on the jury form, answering additional questions even though the form instructed the jury to "go no further" if it answered "No" to the preceding question.)

As explained by this Court, jury resubmission was the preferred course of action when the jury was still present for clarification:

> [Permitting the trial court in its discretion to resubmit inconsistent answers for clarification] promotes both fairness and efficiency.

> We think the better view allows for resubmission. The Ninth Circuit has endorsed resubmission of special verdicts, and, when the jury is still available, resubmitting an inconsistent verdict best comports with the fair and efficient administration of justice. Allowing the jury to correct its own mistakes conserves judicial resources and the time and convenience of citizen jurors, as well as those of the parties. It also allows for a resolution of the case according to the intent of the original fact-finder, while that body is still present and able to resolve the matter. . . . It is certainly preferable to ordering a new trial, and is very probably the best available instrument to determine the jury's intent.

> *Duk*, 320 F.3d at 1058 (internal quotation marks and citations omitted).

"Particularly where the district judge has observed the jury during the trial and is familiar with the special verdict questions, explaining them to the jury, no one more so than the District Court judge is "in the best position to determine whether the answers reflect confusion or uncertainty." *Hauser*, 929 F.2d at 1308 (citing *Richard*, 853 F.2d at 1260).

26

The District Court's decision here to resubmit the matter to the jury is endorsed by a case cited by Cable, *Nance v. Gulf Oil Corp.*, 817 F.2d 1176 (5th Cir. 1987). In the originally-returned verdict in *Nance*, the jury responded to three questions that Gulf Oil Corporation was neither negligent nor strictly liable. *Id.* at 1178. "Mysteriously," the Fifth Circuit noted, after indicating that Gulf was neither negligent nor strictly liable, the jury went on to answer additional questions, apportioning 95% of fault to Gulf and 5% to the plaintiff. *Id.* The district court determined that the interrogatories could not be reconciled because the jury found Gulf neither negligent nor strictly liable, yet apportioned 95% of fault to Gulf. *See id.* Accordingly, the District Court submitted a new verdict form to the jury with new instructions that would reconcile the inconsistency; namely, that if the jury answered the negligence and strict liability questions in Gulf's favor, it was instructed to "stop and proceed no further," and there would be no findings regarding Gulf's share of fault. *Id.*, fn.1. Under the new verdict form, the jury deliberated and submitted a new verdict finding Gulf negligent and strictly liable, assessing 95% of the fault again to Gulf and $275,000 in damages to the plaintiff. *Id.* at 1178.

In *Gulf*, as Cable argues here, Gulf tried to argue that the answers on the first verdict form were reconcilable and by submitting a revised jury form, the district court violated Gulf's Seventh Amendment right to a jury trial and also coerced the jury to rule against Gulf. *Id.* The Fifth Circuit rejected these arguments, "endorsing

27

the district court resolution [resubmission after determining the verdict was inconsistent] of this problem." *Id.* The Fifth Circuit noted that, in spite of Gulf's insistence that the district court should have reconciled the verdict's inconsistency on its own, Gulf "never offered an interpretation that reconcile[d] these answers." *Id.* The Fifth Circuit also appropriately recognized that it would be a stretch of the imagination to "harmonize the findings that Gulf was neither negligent nor strictly liable with the finding rendered against Gulf on the issue of comparative fault (95% at fault)." *Id.* at 1178. Accordingly, resubmission of the verdict form to the jury was acceptable. *Id.* at 1179.

The facts are even stronger here than in *Nance*, as the initial verdict form did contain clear instructions—similar to those in the revised verdict deemed acceptable in *Nance*—that the jury should "stop here" and "answer no further questions" if it found for Starbucks on the discrimination and retaliation claims. 1-ER-58. Unlike the jury in *Nance*, the jury here did not fail to heed the "stop here" instruction and proceeded to leave the rest of the verdict blank, perhaps due to the erroneous selection of "Yes" as opposed to "No" for question 3. And here as well, Cable has yet to proffer a logical interpretation—other than that the initial verdict was the result of a clerical error by the jury—that would reconcile why the jury left the remainder of the verdict blank. 1-ER-59–61. Accordingly, the District Court correctly deduced that the verdict answers were inconsistent with one another under Rule 49(b)(4), as

28

the first-submitted verdict contained incomplete liability on the retaliation claim. *See* 1-ER-9. Thus, the District Court properly exercised its discretion to resubmit to the jury, that had not yet been discharged, as opposed to ordering a new trial, under Rule 49(b)(4).

### C. It Would Not Have Been Appropriate For The District Court To Enter Judgment On The Retaliation Claim And Instruct The Jury To Complete The Rest Of The Verdict Form.

Cable repeatedly suggests throughout his opening brief that, upon seeing the "Yes" answer to the retaliation question, the District Court should have entered judgment on the retaliation claim. *See, e.g.*, AOB 25. This, in turn, begs the issue of whether the District Court appropriately applied Rule 49(b)(4), over Rule 49(b)(3), which allows the court to exercise its authority under Rule 49(b) and enter judgment in accordance with the answers.

The District Court may enter judgment only if it is not reasonably possible to resolve the apparent inconsistency between the answers and the verdict. *Los Angeles Nut House*, 825 F.2d at 1353–54. Here, Rule 49(b)(4) governed over Rule 49(b)(3), as the standalone "Yes" response to the retaliation question could not be reconciled with the jury's failure to answer the questions of failure to prevent; causation; and damages; as such, the District Court was not permitted to enter judgment. Fed. R. Civ. P. 49(b)(4) ("[w]hen the answers are inconsistent with each other . . . *judgment*

*must not be entered* [emphasis added]).

When the answer to a special interrogatory is inconsistent with the general verdict—like here, where the line for damages was left blank yet the jury marked "Yes" to the question regarding retaliation—"Rule 49 does not permit the district court to enter judgment on the general verdict in preference to the answer to the written interrogatory. *Los Angeles Nut House*, 825 F.2d at 1356; *see also Jarvis*, 823 F.2d at 396 (reversing where district court entered judgment, in spite of persisting jury confusion upon resubmission; where jury stated they had filled out the verdict form correctly yet asked for a description of the inconsistency).

The court appropriately did not enter judgment on the first-submitted verdict, as it was plausible that the jury made an error in answering question 3 or failed to complete the entirety of the form. The jury's revised verdict reveals that this decision, to not enter judgment, was sound, as the foreperson clearly wrote that question 3 was mistakenly marked "Yes," when it should have been "No," thereafter writing, "my apologies!" 1-ER-62. Here, where the record suggested jury error in filling out the verdict form, it would have been highly concerning if the District Court usurped the jury's role and tried to resolve the inconsistency itself.

The District Court also could not, as Cable urges, have proceeded to instruct the jury to complete the verdict form and answer only the damages questions. *See* AOB 26. Cable incorrectly cites *Altus*, 540 F.3d at 999 for the proposition that "the

30

court may properly enter judgment only if the answered verdict forms conclusively dispose of the issues submitted to the jury." In *Altus*, the jury proffered an indeterminate special verdict, informing the District Court that it was "hopelessly deadlocked" on one of the special verdict forms. *Id.* Here, the first-submitted verdict, as drafted, did not dispose of all issues, as it left blank answers to the questions of failure to prevent, causation, and damages. 1-ER-59–61. Accordingly, entering judgment would not have been appropriate. *See id.*, at 1005 ("If the answered verdict forms do not dispose of all the issues submitted to the jury, the court must either resubmit the unanswered verdicts to the same jury or declare a mistrial with respect to the unresolved issues.")

Accordingly, this Court should decline to disturb the District Court's exercise of discretion in resubmitting the verdict to the jury for clarification.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION THROUGH ITS DIRECTIONS TO THE JURY UPON RESUBMISSION, NOR DID IT COERCE THE VERDICT.

The District Court's neutral instructions upon resubmission to the jury could in no way coerce the ultimate verdict. Indeed, resubmission was merely to correct a singular inconsistency, which was later revealed—by the jury's conduct—to be an error, as the District Court had suspected.

The District Court's actions subsequent to such a decision to resubmit an

31

inconsistent verdict are reviewed for abuse of discretion. *See Los Angeles Nut House*, 825 F.2d at 1356. "Mere resubmission of a verdict form does not necessarily 'coerce' a verdict." *Nance*, 817 F.2d at 1179. "If a district court decides to address a jury on an inconsistency in its findings, the court must not pressure or coerce the jury, either explicitly or subtly, to reach a certain result through its direction to the jury to reconsider its findings." *Smith v. Riceland Foods, Inc.*, 151 F.3d 813 (8th Cir. 1998).

Neutral, generalized comments—like the ones the District Court made here— have been accepted as proper by other circuit courts. In *Nance*, the district court judge carefully cautioned the jury that, by resubmitting the verdict form, he was not suggesting the proper decision that should be reached or expressing favoritism toward one party over another. *Nance*, 817 F.2d at 1179. Likewise, in *Karl v. Burlington Northern R. Co.*, 880 F.2d 68, 73 (8th Cir. 1989), the District Court, when calling the jury's attention to a legal inconsistency in the initial answers, stated, "take a look and whatever you do is fine with me. I am certainly not trying to get you to change anything unless you decide that you might want to." Upon review, the Eighth Circuit was satisfied that the District Court "phrased its remarks so as not to influence or coerce the jury." *Id.*

Although Cable claims that the District Court did not provide "specific guidance [to the jury]," did not allow counsel to weigh in, did not change the jury

32

instructions, and did not hear or receive new evidence, there is nothing to suggest this is required. The simple instruction to re-read all the questions to complete the form, was neutral and appropriate. Here, the express terms of the special verdict form gave all the instructions that were required and agreed upon by the parties.

*Landry v. Offshore Logistics, Inc.*, 544 F.2d 757 (5th Cir. 1977) confirms that a judge's resubmission to address one inconsistent answer does not constitute a coerced verdict. In *Landry*, the jury's original verdict stated that the plaintiff was not contributorily negligent. *Id.* at 761. Yet in the next question, the jury found that the plaintiff's contributory negligence contributed to 75% of the accident. *Id.* The questions were resubmitted to the jury. *See id.* at 760. The jury erased the 75% negligent finding. *Id.* at 761. In reasoning that the district court's resubmission did not constitute a coerced verdict, the Fifth Circuit reasoned:

> This was simply a case in which, obviously by inadvertence, the jury fell into an inconsistency with reference to one aspect of its verdict. The verdict had not been accepted. The jury had not been discharged. Counsel was present, making no inquiry and raising no objection. The jury quickly eliminated the one inconsistent answer. We can perceive of no sound reason for allowing this episode to abort the trial, necessitating a third trial of this case.

*Id.* at 761.

There is simply no evidence that the District Court here somehow coerced the jury to change its verdict. A review of the transcript shows that the court's remarks remained neutral and did not place any pressure on the jury to change its answers.

33

*See* 1-ER-127:12–128:4.   Notably, the District Court did not guide the jury as to what it had suspected occurred (inadvertent error in answering question 3), so as *not* to engage in the type of coerced verdict that could constitute abuse of discretion. The District Court simply advised the jury that the verdict form was not completed properly and sent the jury "[b]ack to the jury deliberating room."  1-ER-127:17–19. The District Court also requested that the jury "read through all of the questions, particularly, the – well, I'm just going to say, read through all of the questions again . . "[t]ake a look carefully."  1-ER-127:19–22.   The District Court properly gave neutral instructions and gave instructions that expressly, as in *Nance*, did not show favoritism for either side or bias the jury towards a "proper" decision.   The jury's resubmission accurately reflected that the lone inconsistency recognized by the District Court was swiftly clarified: the foreperson wrote, "[p]age Number 4 was incorrectly recorded. The answer should have been <u>No</u>. My apologies!"  1-ER-62 (emphasis in original).  The answer "Yes" was then scratched out, and an "X" was marked next to "No," including the foreperson's initials and date (November 6, 2023).  1-ER-58.  This is akin to the lone, inconsistent answer that was quickly rectified in *Landry*.  The jurors' affirmations, when individually polled, that the revised verdict was their final, unanimous verdict, also "leave[s] no doubt as to their intention or genuine verdict."  *Nordmann*, 425 F.2d at 1106; 1-ER-131:8–132:17.

## IV. THE JURY DID NOT RENDER A "COMPROMISE" VERDICT OR IMPROPERLY MANIPULATE THE FINAL VERDICT.

Lastly, Cable asks this Court to consider whether the jury's final verdict, upon resubmission, was a "compromise judgment," or an attempt to manipulate the final verdict. AOB 33. The evidence overwhelmingly indicates that no compromise verdict was rendered.

Courts have defined a compromise judgment as a decision "reached when the jury, unable to agree on liability, compromises that disagreement and enters a low award of damages." *Nat'l Railroad Passenger Corp. v. Koch Indus., Inc.*, 701 F.2d 108, 110 (10th Cir. 1983) (citations omitted). In order to determine a jury's decision was a "compromise verdict," courts must find a close question of liability, a grossly inadequate damages award, and other circumstances such as length of jury deliberation, suggesting that the verdict was the result of prejudice or an improper compromise. *D'Hedouville*, 552 F.2d at 887; *see also Koch Industries*, 701 F.2d at 110. The court will "presume that citizen jurors will properly perform the duties entrusted them and will not construe resubmission as an invitation to subvert the law and contort findings of fact in favor of a desired result." *Larson*, 9 F.3d at 1058.

A change in a jury's findings after resubmission that clarifies the inconsistency does not, alone, indicate an improper manipulation. And changing an answer upon resubmission, alone, is *not* a compromise verdict, or grounds for a new

35

trial. *See Richard*, 853 F.2d, at 1259-60 (jury after resubmission properly changed first causation verdict of "No" to "Yes"). Further, a court cannot limit the jury's deliberations when it resubmits an inconsistent verdict, as the jury is the finder of fact. Once the judge decides to send the jury back into the jury room, the jurors have the freedom to further deliberate any and all issues. For this reason as well, Cable's argument—that "had the first verdict been merely incorrectly completed . . .the jury would have noticed the error *immediately* upon resubmission in ten seconds, not ten minutes"—does not hold water. AOB 35.

Cable relies heavily on *Riley v. K Mart Corporation*, 864 F.2d 1049, 1052 (3d Cir. 1988). In *Riley*, the jury engaged in an "obvious" compromise verdict due to the change in liability and damages, suggesting that the jury had abdicated its fact-finding duty and its findings were "but a means to a result." *Id.* at 1054. As the Third Circuit reasoned, the "jury apparently determined the amount of damages which should actually be awarded to the plaintiff, and tailored their liability findings to achieve the desired result." *Id.* at 1054. The jury changed its liability finding from 35%/65% to 51%/49% in a clear effort to circumvent Pennsylvania's modified comparative negligence doctrine and worked backwards from their desire to award $75,000 in damages to Riley. *See id.* Accordingly, a new trial was ordered.

By contrast, in *Veranda Beach Club v. Western Surety Co.*, 936 F.2d 1364, 1382-83 (1st Cir. 1991), the jury resolved an inconsistency, changing a finding of

36

apparent authority to a finding of no apparent authority. Recognizing that, while this change held a defendant liable that was, in the previous verdict, not otherwise liable, the First Circuit affirmed the verdict, distinguishing the case from the true "compromise verdict" in *Riley*:

> The case at hand lacks the trappings of transparent contrivance that festooned the Riley case. Here, the jury's original work product contained a single, direct inconsistency, which it resolved in a forthright manner, devoid of fancy footwork; its reconsidered decision that Mongillo acted without apparent authority does not smack of the heedless manipulation which leaps off the printed page in the Third Circuit's rendition of Riley.

*Id.* at 1383.

The Court here should not disturb the jury's consistent, reconsidered verdict. The second verdict simply lacks the hallmarks of a compromise verdict found in *Riley*. Like the jury in *Veranda Beach*, the jury here resolved the obvious inconsistency—confirming whether they meant to write "Yes" or "No" for question 3, so that they could either finish the verdict or fill out the rest of the questions, in accordance with the instructions following question 3. The jury could have elected to redeliberate and come to a different conclusion, answering "Yes" to the retaliation question and filling out the answers to questions 4-6. It did not. Here, the jury rectified the scrivener's error—which the foreman later acknowledged in the juror's note. 1-ER-62. The jury's resubmission was "forthright," as it took them only an additional 10 minutes to revise and re-check their work. *See* 1-ER-10.

Notably, unlike the jury in *Riley*, the jury here engaged in no "fancy footwork"

37

to change the damages to justify a change in liability, seek a predetermined result, or to try and give Cable a damages award that did not comport with the liability finding – the damages portion remained blank. *Veranda Beach*, 936 F.2d at 1383. Unlike *Riley*, the resubmission here did not change the damages whatsoever, nor were there multiple changed findings to suspect any jury wrongdoing. The jury deliberated simply to resolve the inconsistency as to why item no 3 said "Yes," yet the remainder of the form remained blank, contrary to the special verdict instructions. This quick change is consistent with the tenor of the jury's initial deliberation, as noted in the District Court's order denying the motion for a new trial and or to alter or amend the judgment: "the jury's finding in favor of Defendant[] after less than an hour of deliberations (while also eating lunch) suggests that they quickly, comprehensively, and unanimously disbelieved Cable's testimony regarding the events that led to his termination." 1-ER-14. The jury came to the same quick, comprehensive, and unanimous change to their realized error.

The trial court has a duty to reconcile the verdicts "on any reasonable theory consistent with the evidence." *Pierce v. S. Pac. Transp. Co.*, 823 F.2d 1366, 1370 (9th Cir.1987). The District Court properly did so here, accepting the second verdict. Its decision to do so was not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the District Court's order granting judgment for Defendant Starbucks Corporation; denying Cable's motion for new trial and to amend or alter the final judgment should all be affirmed in their entirety.

DATED: September 16, 2024   FISHER & PHILLIPS LLP

       By: _____*s/ Danielle S. Zobel*_____
         Lonnie D. Giamela
         Nicole Golob
         Danielle S. Zobel
         Attorneys for Defendant/Appellee
         Starbucks Corporation

FP 52229434.1

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 24-914

I am the attorney or self-represented party.

**This brief contains** | 9,379 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(◉) complies with the word limit of Cir. R. 32-1.

(○) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

(○) is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

(○) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

(○) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    (○) it is a joint brief submitted by separately represented parties;

    (○) a party or parties are filing a single brief in response to multiple briefs; or

    (○) a party or parties are filing a single brief in response to a longer joint brief.

(○) complies with the length limit designated by court order dated _____ .

(○) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Danielle S. Zobel    **Date** | September 16, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                  *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 24-914

The undersigned attorney or self-represented party states the following:

( •) I am unaware of any related cases currently pending in this court.

( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | /s/ Danielle S. Zobel | **Date** | September 16, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 17**       *New 12/01/2018*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the Appellate CM/ECF system on September 16, 2024. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: September 16, 2024   FISHER & PHILLIPS LLP

       By: _____s/ Danielle S. Zobel_____
        Lonnie D. Giamela
        Nicole Golob
        Danielle S. Zobel
        Attorneys for Defendant/Appellee
        Starbucks Corporation

FP 52229434.1