No. 24-914

# In the United States Court of Appeals
## for the Ninth Circuit

GEORGE CABLE, AN INDIVIDUAL,

*Plaintiff-Appellant,*

v.

STARBUCKS CORPORATION,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the Central District of California
No. 2:20-CV-10931-JLS-AS
Hon. Josephine L. Staton

## REPLY BRIEF

Joshua Cohen Slatkin (SBN 285090)
JCS Law Firm, Inc.
12121 Wilshire Blvd., Ste 810
Los Angeles, CA 90025
josh@jcslawyers.com
(833) 527-3476

*Attorney for Plaintiff - Appellant*
GEORGE CABLE, an individual

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................i

TABLE OF AUTHORITIES .................................................. iii

REPLY BRIEF ....................................................................1

I.   Summary of Argument in Support of Reply ................................. 1

II.  Starbucks fails to refute and address the threshold issue that the jury's failure to answer the damages questions on the first verdict did not render the first verdict inconsistent or invalid ........................................................ 2

A.  The jury's liability finding and failure to answer and award damages on the first verdict did not create a situation where those two legal conclusions were inconsistent 5

B.  Starbucks disregards this court's reasoning in Wilks v. Reyes, 5 F. 3d 412 (9th Cir. 1993) when it argues that the jury would have completed the verdict form and ignores the district court's prejudicial instructions upon resubmission ................................................. 8

III. The District court's instructions prior to resubmission improperly influenced the jury to change its liability finding ... 11

A.  The District Court Was Required to Accept the Liability Verdict and to Ask the Jury to Answer the Remaining Questions on the Verdict Form, or to Declare a Mistrial. .................................................. 13

B.  The district court covered up the jury's reversal in liability findings between the first and second verdict by not addressing the liability reversal with the jury and counsel present ............................................. 15

C.  This court should not create a new precedent that a jury incorrectly completed the verdict form............................ 17

D.   The cases Starbucks relies on involve completed verdicts where damages were answered which is the complete opposite of what occurred in this case and do not involve allegations of verdict forms being incorrectly recorded....................................................19

IV.  THE VERDICT FORM'S CHANGES BETWEEN THE INITIAL AND REVISED VERDICTS RESULTED FROM AN IMPROPER COMPROMISE VERDICT. .................23

V.  Conclusion ...................................................................29

CERTIFICATE OF COMPLIANCE .........................................30

CERTIFICATE OF SERVICE ...............................................31

# Table of Authorities

Page

**Cases:**

*C.B. v. City of Sonora*
730 F.3d 816 (9th Cir. 2013) ............................................................ 11

*Duk v. MGM Grand Hotel, Inc. (Duk)*
320 F.3d 1052 (9th Cir. 2003) ............................................. 21, 22, 27

*Floyd v. Laws (Floyd)*
929 F.2d 1390 (9th Cir. 1991) ............................................... 2, 7, 14

*Larson v. Neimi*
9 F.3d 1397 (9th Cir. 1993) ...................................................... 6, 7

*McCollum v. Stahl*
579 F.2d 869 (5th Cir. 1978) ........................................................ 12

*Nat'l R.R. Passenger Corp. V. Koch IOndus., Inc. (Nat'l Railroad)*
701 F.2d 108 (10th Circ. 1983) .................................................... 23

*Nordmann v. Nat'l Hotel Co. (Nordmann)*
425 F.2d 1103 (5th Cir. 1970) ................................................. 19, 20

*Perricone v. Kansas City Southern Ry. Co.*
704 F.2d 1376 (5th Cir. 1983) ................................................. 12, 13

*Powell v. United States*
347 F.2d 156 (9th Cir. 1965) ........................................................ 11

*Riley v. K Mart Corp. (Riley)*
864 F.2d 1049 (3d Cir. 1988) ................................................. 24, 27

*Veranda Beach Club. V. Western Sur. Co. (Veranda)*
936 F.2d 1364 (1st Circ. 1991) ................................................ 24, 25

*Wilks v. Reyes*
5 F.3d 412 (9th Cir. 1993) ................................................... 8, 9, 10

*Zhang v. Am. Gem Seafoods, Inc. (Zhang)*
339 F.3d 1020 (9th Cir. 2003) ............................................ 2, 3, 4, 19

**Court Rules:**

Fed. R. Civ. P. 49 ...................................................................... 4

## Reply Brief

### I.  Summary of Argument in Support of Reply

Starbucks Corporation ("Starbucks" or "Appellee") opposes Mr. George Cable's ("Cable" or "Appellant") opening brief by simply arguing in a conclusory manner that the jury's failure to answer the damages questions on the first verdict form rendered the first verdict inconsistent and that the reversal of liability findings between the first and second verdict forms was because the jury "incorrectly" marked "yes." This first set of answers on the verdict form prior to resubmission shall herein be referred to as the "first verdict form" or "first verdict" as stated within Cable's opening brief. The second set of answers on the special verdict form with question no. 3 changed from a "yes" to a "no" shall herein be referred to as the "second verdict form" or "second verdict" as stated within Cable's opening brief. Starbucks adopts the district court's conclusions that the jury incorrectly completed the first verdict and that the first verdict was inconsistent based on the jury's failure to answer the damages questions. Starbucks provides no legal authority nor legal reasoning for its conclusions that the first verdict was inconsistent. Starbucks incorrectly attempts to reason backward from the jury's failure to complete the first verdict form that the jury erroneously completed the first verdict and then argues, without legal

authority, that such an incomplete verdict created an inconsistency in the first verdict and that the second verdict was the *correct* verdict that this court should adopt. (Starbucks Answering Brief "SAB" at 22).

Starbucks completely disregards this court's precedent set forth in *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1036 (9th Cir. 2003) *(Zhang)*, that the failure to award damages does not render a verdict inconsistent. Starbucks fails to address and disregards this court's holding in *Floyd v. Laws*, 929 F.2d 1390, 1399 (9th Cir. 1991) *(Floyd)* that this court cannot assume a verdict form was incorrectly recorded.

## II. Starbucks fails to refute and address the threshold issue that the jury's failure to answer the damages questions on the first verdict did not render the first verdict inconsistent or invalid

The jury's first verdict was incomplete, not inconsistent, for purposes of the application of Fed. R. Civ. P. 49(b). Starbucks fails to provide any legal authority to support its position that the first incomplete verdict was inconsistent based on the jury's failure to answer the damages question(s). Rather, Starbucks argues that what makes a verdict "inconsistent is not expressly defined." (SAB at 15). Starbucks misrepresents and disregards this court's precedent regarding inconsistent verdicts.

This court has held that there are "three ways in which legal conclusions such as general verdicts might be alleged to be inconsistent:

the jury might disregard instructions requiring two general verdicts to be harmonious; the jury might return a general verdict that, under the facts of the case, implies a lack of evidence underlying another general verdict; or the jury might return two general verdicts that, under any facts, seem to be legally irreconcilable." (*Zhang*, 339 F.3d at 1032). Starbucks's entire opposition engages in circular reasoning by simply arguing, without any legal authority, that the jury's failure to answer the damages questions on the first verdict form rendered the first verdict inconsistent.

In Zhang, an employment discrimination case with an analysis identical to the facts of this case, this court reasoned as follows:

> "Another persuasive line of cases involves discrepancies between findings of liability and damage awards, <u>typically arising when a jury finds liability but nonetheless awards zero damages</u>... the damage award is not really a separate general verdict, but it is nonetheless a legal conclusion, and so these types of cases also involve purported conflicts between two legal conclusions. In *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 77 (1933), the Supreme Court refused to disturb such a verdict, even though the petitioner had urged that the verdict should have been set aside as inconsistent on its face. *Id.* at 483... This rule retains vitality, and we have noted that the federal rule is that failure to award damages does not by itself render a verdict invalid. *Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 806 (9th Cir. 1984)." (Internal citations omitted).

Zhang 339 F. 3d 1020, 1036 (9th Cir. 2003)

3

The main issue presented in this case for this court to address is whether the jury's failure to answer and/or award damages on the first verdict form (i.e. questions no. 5 and 6) made the first verdict inconsistent. (1-ER[1]-60–61). The district court determined that the first verdict was inconsistent because the jury failed to complete the verdict by answering the damages questions and for that reason invoked the procedures of Federal Rule of Civil Procedure ("FRCP") 49(b)(4). (1-ER-3–4, 9). Under Zhang and Floyd, the district court violated this court's precedents when it made a snap judgement and jumped to the conclusion that the jury "incorrectly" marked "yes" to question no. 3 (Cable's retaliation claim) and determined that the failure of the jury to answer the damages questions made the verdict inconsistent. The failure to award damages did not make the verdict inconsistent. (*Zhang*, 339 F.3d at 1036).

The District court made the assumption that Starbucks wants this court to adopt that the jury understood the "stop here" instruction if it answered "no" to all 3 questions whereas the jury did not understand the instruction to continue completing the verdict form if its response was "yes" to <u>any</u> of the 3 discrimination and/or retaliation questions. (1-ER-9, 58 [Special Verdict Form]). The district court arbitrarily determined that the jury did not understand one set of instructions on

---

[1]   Excerpts of Record

the verdict form and yet did understand another set of instructions when the district court assumed that the "yes" response on question no. 3 on the first verdict was incorrectly recorded. (1-ER-7–16).

### A. The jury's liability finding and failure to answer and award damages on the first verdict did not create a situation where those two legal conclusions were inconsistent

Here, the jury's liability finding and failure to answer and/or award damages on the first verdict did not create a situation where those two legal conclusions-the liability conclusion and the damages conclusion -were inconsistent based on this court's precedent set forth in Zhang. Furthermore, the damages questions did not need to be answered to make the first verdict harmonious. Here, the alleged inconsistency was simply the failure to complete the form to the end.

Starbucks's argument that the jury left blank the substantial factor causation question as a "key element" by not answering question no. 5 on the verdict form is misplaced. (SAB 21). Question no. 5 on the verdict form relating to substantial factor was superfluous since it was subsumed within the retaliation and discrimination jury instructions themselves. (1-ER-67–71). Substantial factor causation was determined in the affirmative by the jury with the jury finding that Cable was retaliated against on the first verdict form based on the Court's Instruction Number 19 Retaliation-Essential Factual Elements, which

stated that in order to find retaliation, the jury was instructed that Cable must prove that he was harmed and "Starbucks Corporation's decision to discharge George Cable was a substantial factor in causing him harm." (1-ER-70). The discrimination causes of actions on the verdict form also subsumed substantial factor causation. (1-ER-67–71). Thus, the jury's finding that plaintiff was retaliated against on the first verdict form necessarily required the jury to find that said retaliation was a substantial factor in causing Cable harm. (1-ER-70). Therefore, only the amount of damages to be awarded to Cable was left undetermined by the jury with their first verdict.

Starbucks' reliance on *Larson v. Neimi*, 9 F.3d 1397 (9th Cir. 1993) is distinguishable. (SAB at 24–25). Starbucks fails to make the essential distinction between the analysis of inconsistent verdicts and a verdict that does not answer damages which is the case at bar. Mr. Cable does not argue that resubmission is never improper. Rather, the district court mishandled the resubmission in this case because the first verdict was not inconsistent, the district court provided prejudicial instructions for the jury to reconsider its prior answers and then the district court accepted liability findings in direct contradiction to the jury's prior answers. Larson expressly held that there are circumstances in which resubmission is improper:

> That is not to say that a court could never abuse its
> discretion when it resubmitted a case to the jury with an
> appropriate explanation of the reason. That case might
> possibly exist, but it is not the case before us.

*Larson v. Neimi*, 9 F.3d at at 1402.

Starbucks fails to make this essential distinction between the analysis of inconsistent verdicts and those containing verdicts where a party argues that a verdict was incorrectly recorded. Floyd would prohibit the resubmission of a verdict with instructions to revisit the jury's prior answers because the district court believed, like the district court did here, that the first verdict was incorrectly completed. *Floyd*, 929 F.2d at 1399 (1-ER-9). Cable agrees that under certain circumstances, such as when a verdict is actually inconsistent, the jury can be asked to clarify. However, *Floyd* made clear that under the circumstances in the case at bar, resubmission is improper. The district court under Zhang and Floyd could never have resubmitted the verdict to jury based on the facts and circumstances we have in this case because the first verdict was not inconsistent and it cannot be assumed the first verdict was incorrectly recorded.

**B. Starbucks disregards this court's reasoning in Wilks v. Reyes, 5 F. 3d 412 (9th Cir. 1993) when it argues that the jury would have completed the verdict form and ignores the district court's prejudicial instructions upon resubmission**

Starbucks makes the same exact arguments in its answering brief which this court disregarded in Wilks v. Reyes, 5 F. 3d 412 (9th Cir. 1993)("Wilks"). Starbucks states that the jury would have written "$0" or "$1" if it intended to award nominal damages. (SAB 20–21). Wilks also revolved around a district court's application of FRCP 49(b). Starbucks makes yet another legal and factually unsupported assumption in reasoning backward from the jury's failure to complete the first verdict form. First, this court should consider the fact that the jury's failure to complete the verdict form hearkens back to the district court's confusing, misleading and prejudicial jury instructions upon resubmission to revisit their answers rather than complete the verdict form. (1-ER-127–128).

The district court refused to provide a jury instruction to answer the damages questions because, according to the district court, such "an instruction that would have amounted to a requirement that the jury find in favor of Cable as to, at the very least, his claim that he was retaliated against and terminated because of his requests for reasonable accommodations." (1-ER-13). However, that is exactly what the jury found with their first verdict! Rather than the district court

8

following the law as provided within Jury instruction 24 based on the jury's first verdict that if they found for Cable, they *must* award damages (1-ER-75, 113) and Instruction 28, which told the jury that, if it found that the plaintiff did not prove actual damages, then the jury *must* award *nominal* damages, (1-ER-78, 116), the district court *incorrectly* instructed the jury upon resubmission to reconsider its answers. (1-ER-127–128). Had the jury been properly re-instructed on the law on damages upon their retaliation finding within the first verdict prior to resubmission, the jury likely would have completed the verdict form to award actual or nominal damages.

In Wilks, the appellee Reyes also argued that "the jury was specifically instructed to return a verdict for Wilks in 'some nominal sum' if it found that Reyes violated Wilks' civil rights. By not awarding damages, Reyes argues that the jury did not think Wilks suffered a constitutional injury. Because constitutional injury is a prerequisite for a § 1983 violation, Reyes contends that he is entitled to have judgment entered in his favor." *Wilks v. Reyes*, 5 F.3d at 415.

This court rejected Reyes argument in holding that:

> "It requires reasoning backward from the jury's failure to award damages. This is artificial in the sense that the jury was instructed to enter a verdict for one of the parties before it reached the question of damages. The jury presumably followed the instructions, and arrived at its general verdict in favor of Wilks only after concluding that Reyes intentionally violated Wilks' constitutional rights."

*Wilks v. Reyes*, 5 F.3d at 415.

Here, like Wilks, the jury was also required to enter a verdict as to liability in favor of one of the parties before it reached the question of damages. (1-ER-55–59). Zero damages would be damages in name only and would reconcile the jury's answer to the special interrogatory with the general verdict. *Wilks v. Reyes*, 5 F.3d at 415. Like Wilks, because the general verdict and the answers to the special interrogatories can be reconciled, the district court erred by entering judgment in favor of Starbucks, rather than entering judgment for Cable.

In this case, the jury concluded that Starbucks retaliated against Cable with their affirmative answer to question no. 3 on the first verdict form. (1-ER- 58). This liability finding and the answers to the special interrogatories on the first verdict form, including the failure to answer the damages questions, could be reconciled and were not inconsistent, under this court's precedent in Zhang and Wilks. The district court should have instructed the jury to follow the instructions on the verdict form, and if necessary, reiterate the damages instructions upon resubmission if resubmission was even required.

### III. The District court's instructions prior to resubmission improperly influenced the jury to change its liability finding

Starbucks' argument that the district court's instructions were neutral and not coercive is factually and legally unsupported. (SRB at 31–32). In evaluating whether a supplemental instruction was proper, the ultimate inquiry is "whether the charge taken as a whole was such as to confuse or leave an erroneous impression in the minds of the jurors." (*C.B. v. City of Sonora*, 730 F.3d 816, 823–824 (9th Cir. 2013))(citing to *Powell v. United States*, 347 F.2d 156, 158 (9th Cir. 1965). Whether a supplemental jury instruction misstates the law is reviewed de novo. (*C.B. v. City of Sonora*, at 823). In this case, the district court reviewed the first verdict form and instructed the jury that it needed to return to the jury room and "read through all the questions again" and to "take a look carefully":

> The Court: Okay. I'm going to hand this back to you <u>because I don't think it's completed properly</u>. I think there's something that—unless I'm missing something. Let me take one more look.
>
> Yes, I want you to go back through---I'm going to send the jury back to the jury deliberating room. <u>Please read through all of the questions</u>, particularly, the--, well, I'm just going to say, read through all the questions again. Don't do that here while you're in here. I'm just going to have you do that when you go back. <u>Take a look carefully</u>. You may pass it around and make sure everybody sees it. And then when you've done

11

that, contact the bailiff again to either indicate that you've reached a verdict or if you have some question, you can put that in a form to the Court. Okay? All right.

(1-ER-127–128)

This court does not need to assume what the district court's intentions were underlying its instructions to the jury prior to resubmission. The district court specifically stated that "Because the jurors left blank the entirety of pages five through seven of the Special Verdict From (other than the signature and date blocks), the Court suspected that the jury had <u>erroneously</u> marked the Answer to Question 3. <u>For that reason, the Court chose to direct the jury to further consider its answers.</u>" (1-ER-9). Jury note no. 2 echoed the court's words that the first verdict form was not completed properly prior to resubmission which is evidence that the court's instructions improperly influenced the jury. (1-ER-62). The Fourth Circuit in *McCollum v. Stahl*, 579 F.2d 869, 870–71 (5th Cir. 1978) determined that the "inescapable implication" the jury derived from resubmission of the verdict was that the finding on liability should be changed to match the finding on damages..." *Id.*

This concern over misleading implications arising from resubmission was also raised in *Perricone v. Kansas City Southern Ry. Co.*, 704 F.2d 1376 (5th Cir. 1983). The Fifth Circuit did state that normally the <u>jury should not be allowed to reconsider its responses</u>. *Id.* at 1379. The court

12

was concerned that the trial judge may have somehow intimated to the jury how it should resolve the ambiguity in the special verdict. *Id.* at 1379–79. The court of appeals was concerned that the judge's demeanor and gestures may have influenced the jury. *Id.* at 1378–79.

In this case, the the district court's instructions to revisit the entire verdict form based on the failure to answer the damages questions was akin to instructing the jury to change their liability finding to match damages. (1-ER-127). As the court sated in *Perricone*, the jury should not be allowed to reconsider its responses but yet, the district court specifically instructed the jury to reconsider its responses. (*Perricone v. Kansas City Southern Ry. Co.*, 704 F.2d at 1379–79). The district court in this case gave a prejudicial instruction which, in effect, told the jury that the first verdict was incorrect and to change its liability finding to match the jury's failure to answer the damages questions on the first verdict. (1-ER-127)

## A. The District Court Was Required to Accept the Liability Verdict and to Ask the Jury to Answer the Remaining Questions on the Verdict Form, or to Declare a Mistrial.

The only valid inference that can be drawn from the jury's failure to complete the verdict form is that the jury, in finding that Cable was retaliated against on the first verdict, did not follow the verdict form's instructions to answer question no. 5 and if question no. 5 was in the

13

affirmative, to answer question no. 6. (1-ER-58–61). Starbucks' entire argument within its answering brief requires this court to 1) disregard the record and 2) disregard 9th circuit precedent in Floyd and urges this court to assume the first verdict with a finding that Cable was retaliated against was "incorrectly" recorded due to a "clerical error." (SAB at 22). Here, "the court suspected that the jury had erroneously marked the answer to question 3" and for that reason "the Court chose to direct the jury to further consider its answers." (1-ER-9–10). This court must assume each answer is correctly marked, and the court must then try to explain the apparent inconsistency in light of the jury instructions and the special verdict as a whole. *Floyd*, 929 F.2d at 1399.

Starbucks completely disregards and fails to address Floyd within its answering brief. Starbucks instead urges this court to overturn the precedent in Floyd by requesting this court to accept the second verdict over the first verdict because the first verdict was incorrectly recorded. Under Floyd, the court is legally bound to disregard the change in answers on the second verdict form as surplusage. *Floyd*, 929 F.2d at 1398–1400.

The jury unanimously found in its first verdict form that Cable was retaliated against by Starbucks (as indicated by its affirmative "yes" to question no. 3), with the jury foreperson's initials next to the "yes." (1-ER-3–4, 7–9, 58, 63). Starbucks, like the district court, completely ignores the entirety of the record prior to the second verdict which

14

establishes that the first verdict was correctly completed. It must be remembered, and cannot be emphasized enough, that the foreperson was asked by the court to review the (initial) first verdict before handing it to the bailiff, and that the foreperson complied with this directive and affirmed the first verdict form correctly represented the unanimous verdict of the jury. (1-ER-63, 126–127.)

### B. The district court covered up the jury's reversal in liability findings between the first and second verdict by not addressing the liability reversal with the jury and counsel present

In this case, we will never know why or how the jury did not complete the verdict form because the district court covered up the jury's reversal in liability findings between the first and second verdict by not addressing the jury's reversal when the jury was still empaneled and counsel were present. (1-ER-128–134). Rather, the court simply asked in a conclusory manner if the second verdict was the jury's accurate verdict and then told counsel there is nothing left to address. (1-ER-132–134). The district court, with the jury still empaneled and counsel present, could have and should have addressed the jury's complete reversal in its liability findings between the first and second verdict.

In fact, it can be argued that the "yes" on the first verdict was even more accurate than the "no" answers on the first verdict since the "no"

answers on the first verdict were not initialed by the foreman whereas the "yes" answer on the first verdict was initialed. The only "no" that was initialed was the "no" on the third question (retaliation) *on the second verdict form* after the verdict was resubmitted and the jury reversed its liability finding. (1-ER-56–58).

A few basic questions posed to the jury while they were still empaneled could have addressed the reasons for the jury's liability reversal. Examples of such questions are as follows:

- How and why did you change your liability finding as to Cable's retaliation claim between the first and second verdict after resubmission?

*If the answer provided was* that the first verdict was incorrectly completed, then a few additional follow up questions would have been warranted, such as:

- How did you incorrectly complete the first verdict form after announcing you reached a unanimous verdict?
- Why did you announce you reached a unanimous verdict with a finding that Cable was retaliated against with your affirmative answer to question no. 3 on the first verdict?
- How and why did you fail to recognize that the verdict form was incorrectly completed when the court asked you to confirm the first verdict was accurate before handing it to the judge? (1-ER-63, 126–127.)
- Did any instructions from the court cause you-the jury- to change your verdict?

16

- *Why was the first verdict* initialed, with the jury foreman's initials immediately next to the "yes" as the only answer on the first verdict form which had initials next to the answer in the first verdict- if the first verdict was incorrectly completed- along with the first verdict being signed and dated by the foreman? (1-ER-58).

- How could the foreman have incorrectly completed the first verdict form when the foreman initialed hisinitials "DB" next to the "yes" for question no. 3 (1-ER-58) and confirmed in open court that the first verdict was accurate? (1-ER-127).

- Why were the "no" answers on the first verdict not initialed but the "yes" next to question no. three was initialed on the first verdict form? (1-ER-56–58)

- Why was the only "no" that was initialed on the "second" verdict after resubmission when you changed your liability finding between the first and second verdicts whereas the "no" answers on the first verdict form were not initialed? (1-ER-56–58)

### C. This court should not create a new precedent that a jury incorrectly completed the verdict form

The district court then abused its discretion by entering judgment on the second verdict over the first verdict. Due to the district court's failure to address the jury's reversal in liability findings between the first and second verdict with the jury and counsel present, Cable's only recourse was to conduct post-verdict juror interviews to find out the real reason the jury reversed its liability findings after resubmission. The record indicates that the district court assumed, in similar fashion as Starbucks is doing throughout its answering brief, that the jury incorrectly completed the first verdict because it failed to complete the

17

verdict, and that the second verdict was *more accurate* and reflected the jury's *real* factual findings as opposed to the first verdict. Such a finding that Starbucks asks this court to adopt would lead to an arbitrary result by finding the second verdict more valid than the first verdict while disregarding the entire record prior to resubmission.

This court cannot create a precedent that the jury incorrectly completed a verdict form and meant to say "no" or "yes" instead of what the jury actually completed on a verdict form as this court set forth in Floyd. Adopting such a rule would set a dangerous precedent that is not administrable. Any party-appellant or appellee alike-can make the argument that the jury incorrectly recorded its answer on the verdict form and the answer should have been the opposite to suit their arguments at the district or appellate court level.

Here, the jury made a definitive finding as to liability that is not subject to *reasonable* dispute, and the district court then should have instructed the jury to complete the verdict form and answer the damage question(s) consistent with the verdict form instructions to award damages if the jury found that Mr. Cable was retaliated against, or in the alternative, the district court could have declared a mistrial. (1-ER-55–58; 75, 113).

### D. The cases Starbucks relies on involve completed verdicts where damages were answered which is the complete opposite of what occurred in this case and do not involve allegations of verdict forms being incorrectly recorded

Starbucks' relies almost exclusively on *Nordmann v. Nat'l Hotel Co.*, 425 F.2d 1103 (5th Cir. 1970) *(Nordmann)* in support of its entire argument that the jury's failure here to answer the damages questions on the first verdict form made the first verdict inconsistent. (SRB-15–20, 34). Starbucks fails to provide any legal authority where the second verdict is completely different from the first verdict which is what happened in this case.

Nordmann is legally and factually distinguishable from this case in several material respects. Nordmann involved a premises liability, negligence case where the jury did not indicate liability but proceeded to answer the damage questions and complete the verdict form. Liability is a necessary condition for a finding of damages. However, damages is not a necessary condition for a liability finding as this court espoused in *Zhang*. A party can succeed in providing liability but still have a valid, consistent verdict despite a finding of no damages. (*Zhang*, 339 F.3d at 1036.) Nordmann, unlike this case, actually returned an inconsistent verdict prior to resubmission because the jury, prior *to resubmission*, answered "no" in terms of its liability finding against the

Hotel for question no. 1 but then continued to answer the damages questions and completed the verdict form along with questions of comparative fault. (*Nordmann*, 425 F.2d at at 1106.)

What happened in this case was essentially the complete opposite of what occurred in Nordmann since here the jury actually did answer the liability questions but failed to answer the damages question(s). Further, the record in Nordmann contained other indicia that is lacking in this case that the initial answer to question no. 1 being "no" was incorrect in that the jury "had first circled 'yes' in pencil, then they had circled 'no' in pencil, and in ink, they had written 'no.' (*Nordmann*, 425 F.2d at 1106)(internal citations omitted). The jury then completed the verdict form. (*Id.*).

The record in this case, as opposed to Nordmann, lacks any indicia that the jury intended to mark "no" as to question no. 3 on the first verdict form. In fact, the entire record prior to resubmission, which the district court and Starbucks intentionally ignored, proves that the affirmative answer to question no. 3 on the first verdict was accurate and correct. There is no indication within the first verdict form whatsoever that the jury first answered "no" let alone intended to answer "no" with respect to Cable's retaliation claim *prior to* resubmission. Furthermore, the holding in Floyd requires this court to find that the first verdict was correctly completed in any event.

Starbucks's reliance on *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052 (9th Cir. 2003) *(Duk)* is similarly misplaced. (SAB at 23). The situation that occurred here is factually and legally distinguishable from Duk. This was an employment case with three discrete causes of action for age and disability discrimination, retaliation and a derivative claim for failure to prevent discrimination as reflected on the verdict form. Duk involved a personal injury, premises liability negligence case with comparative fault principles that under Nevada's comparative fault statutes required the jury to not complete the verdict form if the plaintiff was more than 50% at fault, and the jury did not follow the verdict form's instructions and completed the verdict form after finding plaintiff more than 50% at fault. (*Id.* at 1054–1056.) In Duk, the only change upon resubmission was the apportionment of liability with the percentage of fault under comparative negligence statute. (*Id.* at 1060.)

Duk involved a completed verdict form in violation of the verdict form's instructions whereas this case involved an incomplete verdict form in violation of the verdict form's instructions. In Duk, the jury did not completely reverse its negligence liability finding and find no negligence whatsoever which is akin to what occurred in this case. Here, the only way the court can reconcile the difference between the first and second verdicts is by assuming the jury incorrectly completed the first verdict, which is contrary to what occurred in Duk.

21

In this case, unlike Duk, the district court resubmitted the verdict form to the jury based on an alleged inconsistency because of the jury's failure to answer the damage questions and invoked the procedures set forth in FRCP 49(b)(4). However, in Duk, the verdict was resubmitted for clarification purposes because the jury completed the verdict form after finding Plaintiff more than 50% comparatively at fault. (*Duk*, 320 F.3d at at 1055.) Here, the issue was the jury's failure to complete the verdict form and answer the damages questions and the district court's assumption that the first verdict was not only inconsistent but incorrectly recorded. What happened in this case was not simply a matter of the jury changing its answer as to percentage of comparative fault like Duk.

Jury Note No. 2 provides an implausible explanation that the first verdict form was incorrectly completed particularly in light of the record in this case. (1-ER-62). Duk did not involve a situation like we have here where the jury and the district court alleged the first verdict was "incorrectly" completed and the jury completely reversed its liability finding. The court must disregard the explanation for changing the first verdict form as being incorrectly recorded under Floyd and find that the answers on the first verdict form were answered correctly.

## IV.  THE VERDICT FORM'S CHANGES BETWEEN THE INITIAL AND REVISED VERDICTS RESULTED FROM AN IMPROPER COMPROMISE VERDICT.

Starbucks argues that Cable's claim of a compromise verdict is unsupported by the evidence and the jury simply "rectified the scrivener's error." (SRB at 35, 37). Starbucks' completely ignores the entire record in this case prior to resubmission in support of its position. Starbucks also ignores and disregards 9th Circuit precedent in Floyd that this court cannot assume that a juror incorrectly recorded and marked the first verdict form. What is improbable based on the record in this case and 9th Circuit precedent in Floyd is that the first verdict was "incorrectly" recorded. Starbucks provides no persuasive facts within the record and no legal binding authority to explain how or why the first verdict could have been incorrect except for the fact that the verdict was incomplete and the verdict was changed *after* resubmission.

Starbucks cites to *Nat'l R.R. Passenger Corp. V. Koch IOndus., Inc.*, 701 F.2d 108, 110 (10th Circ. 1983) *(Nat'l Railroad)* in support of its argument that there was no compromise verdict. (SAB at 35). Nat'l Railroad involved one verdict, did not address inconsistent verdicts and there was no second verdict which was entirely different from the first verdict like we have in this case. Here, the jury completely reversed its liability findings on the second verdict and the reason for the reversal

23

accepted by the district court was that the first verdict was incorrectly recorded. The situation of what constitutes a compromise verdict in Nat'l Railroad is different from the record this court must analyze here.

Starbucks also argues that the fact that it took the jury ten minutes to change the first and second verdict and fifty minutes to reach the first verdict is indicative of a lack of a compromise verdict. (SRB at 37). There is no precedent mandating a certain amount of time spent on any verdict form, let alone a second verdict after resubmission, to be indicative of accuracy or reliability as Starbucks would have this court believe. See *Riley v. K Mart Corp.*, 864 F.2d 1049, 1054–55 (3d Cir. 1988) *(Riley)*(reversing and remanding for a new trial when the jury changed the second verdict form "in a matter of minutes"). There is simply no precedent for the court to rely on to establish that the length of the jury deliberations establishes a liability finding in favor of Starbucks both for the first and second verdicts.

Starbucks reliance on *Veranda Beach Club. V. Western Sur. Co.*, 936 F.2d 1364, 1382–1383 (1st Circ. 1991) *(Veranda)* is inapplicable to the facts at issue here because the first verdict was not inconsistent. (SRB at 36–37). Veranda involved a situation of applying Massachusetts law of apparent authority. (*Id.* at 1377.) In Veranda, the "jury's original work product contained a single, direct inconsistency, which it resolved

24

in a forthright manner" when the jury first returned in answering question no. 3 that Mongillo acted with Western Surety's apparent authority yet it rendered a verdict against Mongillo alone. (*Id.* at 1383.)

> The court rejected this suggestion, instead bringing the jury into the courtroom and explaining that there was an inconsistency between the verdict and the answers. The jury resumed deliberations, armed with pristine replicas of the special questions and verdict slips. After approximately fifteen minutes, the jury again returned. Its answers to all the special questions were identical, with one exception. The exception -- answering Questions No. 3 and 4a in the negative, rather than in the affirmative -- remedied the inconsistency. The jury again rendered a verdict in favor of FRG alone, against Mongillo alone, in the amount of $ 2,300,000"

*Veranda*, 936 F.2d at at 1383.

Starbucks's reliance on Veranda is misplaced and again relies on its legally unsupported position that the first verdict was, in fact, inconsistent. Unlike Veranda, the district court here did not explain anything, let alone address an alleged inconsistency with the jury prior to resubmission, except to say prior to resubmission that the first verdict was "not completed properly" and to review all the answers again and to pass the verdict form around. (1-ER-127–128). Veranda is inapposite both in terms of the completely different set of factual circumstances underlying the verdict form itself and case facts themselves and the instructions the district court provided to the jury

prior to resubmission. The complete reversal in liability findings between the first and second verdict in this case is not what occurred in Veranda.

In fact, perhaps the most troubling aspect of the district court's handling of the jury's reversal between the first and second verdict forms, is its acceptance of a second set of responses totally inconsistent with the jury's original answers as the court held in Riley. (Riley 864 F. 2d. at 1054). The jury's second set of answers made one thing clear-that the jury did not intend to award Cable any damages and like Riley, the jury, upon resubmission, tailored their liability findings to achieve this desired result. The district court's decision to accept the second verdict over the first verdict was based largely in part because the district court supported and agreed with the second verdict and not the first verdict. (1-ER-7–16). It is the jury-and not the district court-who is the judge of the facts and makes liability findings. The district court, like Starbucks does in its answering brief, ignored all evidence within the record that the first verdict was accurate when the district court had the foreman confirm the first verdict was accurate prior to handing it to the court and saw that the "yes" on the verdict form had the foreman's initials right next to it. (1-ER-63, 126–127)

There are two likely explanations for the jury's liability reversal between the first and second verdicts. First, the jury's change in liability findings could have been due to improper judicial influence

with the court's instructions, a compromise verdict and/or some combination between the two. Improper judicial instructions and/or jury compromise can be interrelated and are not mutually exclusive. Duk explicitly recognized that resubmission leaves open the possibility that the jury will reach an improper "compromise" verdict. *Duk*, 320 F.3d at 1058, citing to *Riley*, 864 F.2d at 1054–55.

The Court is mindful that there is always a concern that the jury completes the verdict form with the intent to reach a "pre-determined destination" and revises its findings "to reach the damage award it desired" when the jury changes the verdict form as to liability and damages. Id. That is exactly what occurred here. The jury changed its liability finding to match the damage award it desired as both the first and second verdict failed to answer the damage questions.

In this case, the jury's contradictory findings regarding liability between the first and second verdict form strongly suggest that the jury failed to give due regard to the evidence, subverted the law, and contorted the facts in order to achieve a desired result. The jury's change and complete reversal in its liability finding as to plaintiff's retaliation claim for question no. 3 is illogical on its face. It is also undisputed that the jury did not answer the damages questions on the first verdict form after marking "yes" on question no. 3, which, based on the verdict form's instructions, would have required them to answer damage questions. The jury's complete disregard for damages within

the first verdict form establishes an intolerably high probability that the jury rendered a compromise verdict when it changed its answer from a yes to a "no" on the second verdict form thereby obviating the need to address, answer and/or award damages.

Under *Floyd*, the court is required to find that the first verdict form was correctly completed. The foreman either lied to the court after the first verdict or lied on Jury Note No. 2 as to the reason for the changed verdict. Based on the record and 9th Circuit precedent in *Floyd*, this court should conclude that the first verdict was accurate as to the jury's liability findings whereas the second verdict was not. Either way, this inconsistency as to the reason why the verdict form was changed undermines the validity of the second verdict. The first and second verdict forms are irreconcilably inconsistent due to the change in liability findings as to Mr. Cable's retaliation claim.

## V.  Conclusion

For the foregoing reasons, the judgment of the district court in favor of Starbucks Corporation should be reversed, and the case remanded for trial as to all issues, or, in the alternative, the first verdict should be reinstated and entered as a judgment in favor of Mr. George Cable and the case should be remanded for a trial as to damages only.

JCS Law Firm, Inc.

Respectfully submitted,

Dated: October 4, 2024        By: /s/ Joshua Cohen Slatkin

Attorney for Plaintiff - Appellant
GEORGE CABLE, an individual

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **6,552 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**, using TypeLaw.com's legal text editor.

JCS Law Firm, Inc.

Respectfully submitted,

Dated: October 4, 2024

By: /s/ Joshua Cohen Slatkin

Joshua Cohen Slatkin

Attorney for Plaintiff-Appellant GEORGE CABLE, an individual

## Certificate of Service

I hereby certify that I electronically filed the foregoing **REPLY BRIEF** with the Clerk of the Court by using the Appellate CM/ECF system on **October 4, 2024**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

|  |  |
|---|---|
|  | JCS Law Firm, Inc. |
|  | Respectfully submitted, |
| Dated: October 4, 2024 | By: /s/ Joshua Cohen Slatkin |
|  | Joshua Cohen Slatkin |
|  | Attorney for Plaintiff - Appellant |
|  | GEORGE CABLE, an individual |